# EXHIBIT 1

## CITY OF KINGMAN, ARIZONA
## RESOLUTION NO. 1601

**A RESOLUTION BY THE MAYOR AND COMMON COUNCIL OF THE CITY OF KINGMAN; AUTHORIZING THE MAYOR TO EXECUTE A "THIRD AMENDMENT AND RESTATEMENT" OF THE LEASE AGREEMENT BETWEEN THE CITY AND THE MOHAVE COUNTY AIRPORT AUTHORITY, INC., CONCERNING THE KINGMAN AIRPORT AND INDUSTRIAL PARK.**

**WHEREAS,** the City currently leases the Kingman Airport and Industrial Park to the Mohave County Airport Authority, Inc., pursuant to a Lease Agreement dated as of May 21, 1979 (as previously amended on July 2, 1979 and November 3, 1986); and

**WHEREAS,** the Airport Authority has requested that the Lease Agreement be further amended to provide for a new term to run from January 20, 1992 until January 19, 2017; to add to the leased premises certain parcels in the industrial park which have been reacquired by the City; and to make other minor changes which are of a "housekeeping" nature; and

**WHEREAS,** the Airport Authority has proposed a Third Amendment and Restatement of Lease Agreement in the form attached hereto as Exhibit A; and

**WHEREAS,** the Mayor and Council have been advised by the City Attorney that the Third Amendment and Restatement is in proper form and find that the execution of same would be in the best interests of the City,

**NOW, THEREFORE, BE IT RESOLVED** by the Mayor and Common Council that the Mayor is hereby authorized to execute on behalf of the City a Third Amendment and Restatement of Lease Agreement in the form attached hereto as Exhibit A.

**PASSED AND ADOPTED** by the Mayor and Common Council of Kingman, Arizona, on January 20, 1992.

_Carol S. Anderson_
CAROL S. ANDERSON, MAYOR

ATTEST:

_Charlene Ware_
CHARLENE WARE, CITY CLERK

APPROVED AS TO FORM:

_Lance Payette_
LANCE B. PAYETTE, CITY ATTORNEY

# THIRD AMENDMENT AND RESTATEMENT
## OF LEASE AGREEMENT

THIS THIRD AMENDMENT AND RESTATEMENT OF LEASE AGREEMENT is made this _____ day of _____, 1992, by and between the **CITY OF KINGMAN**, a municipal corporation functioning under the laws of the State of Arizona, (hereinafter referred to as "LESSOR") and the **MOHAVE COUNTY AIRPORT AUTHORITY, INC.,** a non-profit corporation organized under the laws of the State of Arizona (hereinafter referred to as "LESSEE").

**WHEREAS,** MOHAVE COUNTY and LESSEE entered into a Lease Agreement dated May 21, 1979, whereby MOHAVE COUNTY leased to LESSEE the Kingman Airport; and

**WHEREAS,** MOHAVE COUNTY and LESSEE entered into addenda to the above-referenced Lease Agreement on July 2, 1979, and November 3, 1986; and

**WHEREAS,** MOHAVE COUNTY transferred and conveyed its ownership interest to that certain real property known as the Kingman Airport to the CITY OF KINGMAN on or about December 19, 1988; and

**WHEREAS,** LESSEE continues to lease the Kingman Airport from the CITY OF KINGMAN pursuant to the terms of the Lease Agreement dated May 21, 1979, as amended; and

**WHEREAS,** LESSOR has acquired title to several former Kingman Airport parcels to be added to that certain real property known as the Kingman Airport, all as described by Exhibit "A" hereto; and

**WHEREAS,** LESSOR and LESSEE are agreed that the improvement, development, operation and maintenance of the Kingman Airport and its expense will be in the public interest; and

**WHEREAS,** under the provisions of A.R.S. §2-301, et seq., LESSOR is authorized, among other things, to acquire, establish, construct, own, control, lease, equip, improve, maintain, operate and regulate airports; and

**WHEREAS,** under the provisions of A.R.S. §2-301, et seq., LESSOR is authorized to enter into agreements with a non-profit corporation for airport or air terminal purposes and for the operation and maintenance of airports, air terminals and uses incidental thereto; and

**WHEREAS,** LESSEE was formed as a non-profit corporation under A.R.S. §10-451, et seq., and A.R.S. §2-311, et seq., for the purpose of engaging in the promotion, establishment, development and maintenance of airports and adjacent property for the benefit of air transportation and commercial or industrial activities, for the general public benefit of the residents of Mohave County; and

**WHEREAS,** LESSOR and LESSEE desire to enter into a Third Amendment and Restatement of Lease Agreement for the Kingman Airport;

**NOW THEREFORE,** in consideration of the mutual covenants herein, the parties agree as follows:

1.   **LEASED PREMISES.**   LESSOR hereby leases to LESSEE and LESSEE does hereby lease from LESSOR for airport and air terminal purposes, and for all purposes related thereto, and for all purposes incidental thereto, and for the purpose of carrying on any other revenue-producing business in connection therewith, the property described by Exhibit A attached hereto and by reference made a part hereof.

2.   **TERM.**   The term for which the leased premises are leased shall commence on the 20th day of January, 1992, and shall expire on the 19th day of January, 2017, subject to the right of

renewal hereinafter set forth, unless said term is sooner terminated as hereinafter provided.

3. **OPTION TO RENEW.** LESSEE may, at its sole option, extend the term of this Third Amendment and Restatement of Lease Agreement for an additional period of twenty-five (25) years at the same rental and under the same terms and conditions as contained in this Third Amendment and Restatement of Lease Agreement, said option to be exercised prior to the expiration of the prime term by LESSEE giving notice in writing to LESSOR of its intention to renew, together with the payment of the rent required by Subparagraph 5.B. hereinbelow.

4. **SURRENDER OF PREMISES.** Upon expiration or sooner termination of the prime term of this Third Amendment and Restatement of Lease Agreement, or any renewal thereof, LESSEE covenants and agrees that it will give up, surrender and deliver to LESSOR the leased premises together with title to all buildings, structures and improvements added to the leased premises during the term of this Third Amendment and Restatement of Lease, as well as all personal property, furniture, fixtures and other equipment contained thereon and used in connection with the operation of said airport and airport terminal and purchased or acquired for said purposes.

5. **RENT.** As rent for the leased premises, LESSEE shall pay to LESSOR the following:

A. The sum of ONE DOLLAR ($1.00) for the prime term of this Lease, payable on or before January 31, 1992.

B. The sum of ONE DOLLAR ($1.00) for the successive twenty-five (25) year term, if renewed, subsequent to the expiration of the prime Lease, payable on or before January 1, 2017.

6. **REPAIRS.** LESSEE shall take care of the leased premises, together with all improvements, fixtures and personal

property thereon, whether now on the premises or hereafter added, and shall make all necessary repairs, inside and outside, structural or otherwise, so as to maintain and preserve them in good order and condition and keep the leased premises as an operating airport and air terminal in good condition, ordinary wear and tear excepted.

7.   **EXPENDITURES IN EXCESS OF TEN THOUSAND DOLLARS.**   In the erection, improvement and repair of all buildings, structures, works, runways, improvements, fixtures and personal property, and in furnishing supplies and materials for same or for any other use by LESSEE, when the expenditure required exceeds the sum of TEN THOUSAND DOLLARS ($10,000.00), LESSEE shall advertise for bids for the work contemplated and for furnishing such supplies and materials, and ask for sealed proposals. Any such contract shall be let to the lowest responsible bidder. LESSEE may, however, reject any and all bids submitted and may readvertise for bids. The TEN THOUSAND DOLLAR ($10,000.00) minimum established by this paragraph has been based on the requirements set forth in A.R.S. §41-2535. In the event A.R.S. §41-2535 is modified during the term of this Lease, or any renewal or extension thereof, the modified amount set forth therein shall be automatically substituted for the amount set forth herein.

8.   **ASSIGNMENT AND MORTGAGE.**   LESSEE shall not assign, mortgage, pledge, hypothecate or encumber this Third Amendment and Restatement of Lease Agreement, or any part thereof, or sublet the leased premises in its entirety. LESSEE may sublet portions of the leased premises and may enter into other agreements with third persons for the use thereof and for such purpose. Nothing contained in this paragraph shall prevent LESSEE from pledging in whole or in part the revenues of the airport and air terminal and adjacent lands after providing for operation and maintenance costs as security for the payment of bonds or other obligations issued, incurred or assumed for airport and air terminal purposes to or for the benefit of the holders of such bonds or other obligations, or from making such bonds or other obligations a lien upon such revenues.

9. **ACCOUNTS.** LESSEE agrees that LESSOR may, during reasonable times and hours, inspect LESSEE's books and records. LESSEE further agrees to furnish LESSOR, upon LESSOR's request, within a reasonable period of time, annual operating statements and detailed balance sheets, certified by a certified public accountant of the State of Arizona, at LESSOR's expense.

10. **FINANCING AND DEVELOPMENT OF AIRPORT AND AIR TERMINAL.** LESSEE shall be obligated to the extent it deems necessary to rehabilitate, expand, improve and develop the airport and air terminal, and shall have the right, in its discretion, to issue bonds and incur obligations and make expenditures for such purposes. None of the bonds issued by LESSEE shall be a lien or charge upon the leased premises. Title to the buildings, structures and additions made or added to the leased premises by LESSEE or any of its subtenants shall vest in LESSOR immediately upon annexation, except where leases, permits, licenses or other agreements provide the title thereto shall remain in the lessees, permittees or third persons. Bonds issued or other obligations incurred or assumed by LESSEE for airport and air terminal purposes shall not be obligations of LESSOR, and LESSEE shall have no power to pledge the credit of LESSOR in any way whatsoever.

11. **OPERATING CONTRACTS AND SUBLEASES.** LESSOR and LESSEE acknowledge that LESSEE has permitted subleases, permits, licenses, contracts and agreements related to the leased premises. LESSEE hereby acknowledges that it shall be responsible for and hold LESSOR harmless from all claims arising out of or in respect to all such subleases, permits, licenses, contracts and agreements, whether existing as of the date of this Third Amendment and Restatement of Lease Agreement or entered into hereafter. All rentals, fees and other payments due under said subleases, permits, licenses, contracts and agreements shall be payable to LESSEE.

12. **OTHER CONTRACTS AND AGREEMENTS.** This Third Amendment and Restatement of Lease Agreement and all subleases,

permits, licenses, contracts and agreements entered into by LESSEE shall be subject to the following requirements:

A. <u>Public Use of Airport</u>. LESSEE agrees to operate the airport for the use and benefit of the public, to make available all airport facilities and services to the public without unjust discrimination, and to refrain from imposing or levying excessive, discriminatory or otherwise unreasonable charges or fees for any use of the airport or its facilities or for any airport services.

B. <u>Exclusive Use</u>. It is understood and agreed that nothing herein contained shall be construed to grant or authorize the granting of any exclusive right within the meaning of Section 303 of the Civil Aeronautics Act of 1938, as amended.

C. <u>Maintenance of Landing Area</u>. LESSOR reserves the right, but shall not be obligated to LESSEE, to develop or improve the landing area of the airport and all publicly-owned facilities of the airport.

D. <u>Development of Landing Area</u>. LESSOR reserves the right, but shall not be obligated to LESSEE, to develop or improve the landing area and all publicly-owned air navigation facilities.

E. <u>Approach Protection</u>. LESSOR reserves the right to take any action it considers necessary to protect the aerial approaches of the airport against obstruction, which in the opinion of LESSOR would limit the usefulness of the airport or constitute a hazard to aircraft.

F. <u>National Emergency</u>. During the time of war or national emergency, LESSEE shall have the right to enter into an agreement with the United States government for military or naval use of part or all of the landing area, the publicly-owned air navigation facilities and/or other area facilities of the airport. If any such agreement is executed, the provisions of this instrument, insofar as they are inconsistent with the provisions of the agreement with the government, shall be suspended.

G. <u>Subordination to Federal Agreements Generally</u>. This Agreement shall be subordinate to the provision of any existing agreement between LESSOR and the United States, relative to the operation or maintenance of the airport, the execution of which has been or may be required as a condition precedent to the expenditure of federal funds for the development of the airport.

H. <u>Additional Federal Aviation Administration Regulations</u>. LESSEE agrees to manage and operate the leased premises in accordance with Federal Aviation Administration

6

Regulations, attached hereto as Exhibit B and by reference made a part hereof.

13.   **PROCEEDS FROM SALES OF REAL PROPERTY.**   LESSOR hereby agrees to pay to LESSEE all proceeds which it receives arising out of each and every sale of real property which or at any time may be leased premises under the terms of this Third Amendment and Restatement of Lease Agreement or any renewal, extension or modification thereof.   LESSEE agrees to use said funds in a manner consistent with those agreements entered into between MOHAVE COUNTY and the UNITED STATES GOVERNMENT dated June 1, 1962, and December 19, 1988, copies of which are attached hereto as Exhibits C and D and by reference made a part hereof.

14.   **INSURANCE.**   LESSEE hereby undertakes and agrees to indemnify and save LESSOR harmless from any claims, causes of action or judgments by reason of personal injuries sustained by any person or persons, including death, in the leased premises, and for any claims for damage to property, and agrees to procure, from companies permitted to do business in the state of Arizona, such insurance as will protect LESSOR from any such claims, suits, demands or judgments which may arise from the operation, control or occupancy of the leased premises.   Such insurance shall provide a single limit of at least TEN MILLION DOLLARS ($10,000,000.00), or such amount as LESSOR may require, in any one occurrence.   LESSEE further agrees to procure insurance with extended coverage endorsement on all buildings, structures, equipment and fixtures in or upon the leased premises and used in connection with the operation and maintenance of the airport and air terminal.   Such policies shall cover the property to the extent of a minimum of the amount necessary to cover the interests of both LESSOR and LESSEE.   All policies shall provide that loss, if any, shall be payable to LESSEE, which shall hold the proceeds of all such insurance in a trust fund for the purpose of repairing or reconstructing any of the buildings, structures, equipment or fixtures damaged or destroyed by reason of any of the risks insured against by such policies or for the purpose of making other capital improvements to the airport or air terminal.   In the

event the proceeds of such insurance exceed the cost of any such repairs or reconstruction, or of the making of such capital improvements, such excess shall be paid to LESSOR. If LESSEE shall not commence such repairs or reconstruction, or other capital improvements, with one (1) year from the date of receipt of the proceeds of such insurance, the same shall be paid over to LESSOR. In the event such proceeds shall be insufficient, then LESSEE shall make repairs, reconstruction or replacements at its own expense. Copies of all policies of insurance or certificates thereof shall be delivered to LESSOR and the premiums thereof shall be paid by LESSEE. All insurance shall jointly cover both LESSOR and LESSEE. Any additional insurance shall be at the sole cost of LESSEE.

15. __GOVERNMENT AID.__ LESSOR agrees to cooperate with LESSEE, if so requested by LESSEE, in making any necessary applications for and in securing any and all governmental or other aid which may be obtainable for the airport and air terminal under any applicable laws, but LESSOR shall not be obligated to LESSEE to assume any financial liability or obligation in connection therewith.

16. __ADDITIONAL LANDS AND INTEREST THEREIN.__ LESSOR shall immediately upon acquisition of any lands and improvements thereon or rights, easements or interest therein for use in extension of the airport or air terminal, or for use in expansion of the airport or air terminal, or for use in maintaining airplane beacons, guides or other aids to aviation, convey the same to LESSOR without consideration, and such property shall become part of the leased premises.

17. __CONDEMNATION OR ACQUISITION BY OTHERS.__ In the event the leased premises or any part thereof, or the right and interest of LESSEE hereunder in or to the leased premises or any part thereof, shall be condemned, taken or acquired by a body having superior power of eminent domain, the compensation or award therefor shall be payable in accordance with the following provisions:

A.   Out of said compensation or award there shall be paid to LESSEE an amount equal to the sum of the following:

(1)   The amount required to redeem any of LESSEE's Bonds or to pay any of LESSEE's obligations issued or incurred for airport and air terminal purposes and outstanding at the time title vests in the condemning power at the earliest dates after such decree or judgment when any such bonds may be called for redemption or such obligations may be paid, or, if any such bonds or obligations are not subject to call or immediate payment, then the amount required to redeem or pay them at their maturity, less the following three (3) items:

(a)   The assets of any sinking fund established for redemption of any bonds or other obligations issued, incurred or assumed for airport and air terminal purposes, or any other public purposes, including interest thereon.

(b)   The proceeds remaining unexpended from the sale of any and all bonds or other obligations issued, incurred or assumed for airport and air terminal purposes.

(c)   Any cash set aside for redemption of bonds issued or the payment of any obligations incurred or assumed for airport and air terminal purposes.

(2)   The interest on any such bonds or obligations from the last interest payment date prior to the vesting of title in the condemning power up to the date of such call or maturity;

(3)   The call premium, if any;

(4)   Any unamortized funds of LESSEE, other than bonds or other obligation proceeds, or federal, state or city grants, expended for capital improvements at the airport or air terminal.

B.   The balance, if any, of such compensation or award shall be paid to LESSOR.

The amount paid to LESSEE as provided by this paragraph shall, together with any funds remaining unexpended for airport and air terminal purposes from the proceeds of any such bonds or obligations, be set aside in a special fund. If, after the payment or redemption of all said bonds and obligations with

interest and after the deduction of unamortized funds of LESSEE as aforesaid, there shall remain any balance in said special fund including income and appreciation thereon, LESSEE shall pay such balance to LESSOR.   If the whole of said leased premises or the right and interest of LESSEE in or to the same shall be payable thereunder.   If only part of the said leased premises or if the right and interest of LESSEE in or to the same shall be condemned, taken or acquired is so substantial as to make it impractical to proceed with the operation of the leased premises for airport or air terminal purposes, or other public purposes, then and in such event, no further rental shall be payable hereunder, provided, however, that possession of the leased premises remaining shall be promptly surrendered to LESSOR as if the term hereof shall have come to an end.   If, however, only a part of said leased premises or of the right and interest of LESSEE in or to the same shall be condemned, taken or acquired, and the remaining is sufficient to conduct the operation thereof for airport and air terminal purposes, or other established public purposes, then, and in such event, the obliga-tions of LESSEE under the provisions of this Agreement relating to rent as well as under other provisions of this Agreement shall continue and remain unaffected by such condemnation, taking or acquisition.

18.    **INSPECTION.**    LESSOR reserves the right of free access to all portions of the leased premises for the purpose of inspection, during reasonable times, upon reasonable notice.

19.    **PROMOTION OF AIRPORT ACTIVITIES AND SUPERVISION.** LESSEE agrees to use diligent efforts to promote aeronautical activities at the airport and to secure persons who wish to base their aeronautical activities at the airport, either as fixed-base users or non-scheduled air carriers, or as lessees, and to promote other types of revenue-producing businesses and recreational activities at the airport. LESSEE shall supervise the airport and all activities thereon in a businesslike and prudent manner, and shall cooperate with LESSOR in securing compliance by other airport

10

users of pertinent laws and regulations and of the terms of any agreement or lease relative to the use of the airport. LESSOR and LESSEE specifically acknowledge that the efforts of LESSEE and the expenditures of authorized funds by LESSEE to enhance the Industrial Park area of the leased premises is beneficial to the long-term growth of aviation activities on the leased premises.

20.   **TERMINATION BY LESSOR.** LESSOR shall have the right to terminate this Third Amendment and Restatement of Lease Agreement in its entirety or to enforce this Agreement by any appropriate remedy immediately upon the happening of any of the following events:

A.   Filing of a petition, voluntarily or involuntarily for the adjudication of LESSEE as bankrupt;

B.   The making by LESSEE of any general assignment for the benefit of creditors;

C.   The occurrence of any act which operates to permanently deprive LESSEE of the ability to perform its duties under this Agreement (except suspension of operations resulting from war or national emergency);

D.   The abandonment of operations at the Airport by LESSEE;

E.   The failure by LESSEE to perform, keep and observe any and all of the terms, covenants and conditions herein contained on the part of LESSEE to be performed, kept or observed after the expiration of ninety (90) days from the date written notice has been given to LESSEE by LESSOR to correct such default or breach, provided that LESSOR shall extend said period in the event LESSEE shall furnish satisfactory evidence that it is continuously and diligently attempting to correct such default or breach.

21.   **TERMINATION BY LESSEE.** Should LESSOR fail to observe any provisions of this Agreement, written notice of such delinquency shall be given by LESSEE. If such delinquency continues uncured for ninety (90) days after receipt of such notice, LESSEE may elect to terminate this Agreement in its entirety or enforce this Agreement by any appropriate legal remedy.

22. **EFFECT OF THIRD AMENDMENT AND RESTATEMENT OF LEASE AGREEMENT.** LESSOR and LESSEE hereby acknowledge that this Third Amendment and Restatement of Lease Agreement supersedes in its entirety all of the Lease Agreement entered into between MOHAVE COUNTY and LESSEE dated May 21, 1979, as amended.

23. **NOTICE.** Any notice desired or required to be served by either party upon the other or whenever notice is provided for in this Agreement, it shall be given in writing and hand-delivered or mailed by certified mail, return receipt requested, to the party to whom addressed, as set forth hereinbelow:

<u>LESSOR</u>:          CITY OF KINGMAN
                   310 North Fourth Street
                   Kingman, AZ  86401

       With a copy to:

                   KINGMAN CITY ATTORNEY
                   310 North Fourth Street
                   Kingman, AZ  86401

<u>LESSEE</u>:          MOHAVE COUNTY AIRPORT AUTHORITY, INC.
                   7000 Flightline Drive
                   Kingman, AZ  86401

       With a copy to:

                   BRUNO, WEISBERG & BROOKS, P.C.
                   730 East Beale Street
                   Kingman, AZ  86401

Any party may change the address to which notice shall be delivered or mailed by notice duly given.

24. **NON-DISCRIMINATION.** LESSEE shall make no distinction among persons entitled to the benefit of use of the premises, nor shall it discriminate against any employee or applicant for employment on the premises, on the basis of race, color, creed, sex or national origin in accordance with state or federal laws. Any violation of this paragraph by LESSEE shall constitute a material

breach of this Agreement.

25.   <u>SEVERABILITY</u>.      If it is determined that any specific clause or provision is prohibited by law, then that provision shall be null and void but shall not affect the other provisions of this Agreement, which nevertheless remain in full force and effect.

26.   <u>CONTINUITY</u>.   This Agreement and each and all of the covenants, obligations and conditions hereof shall inure to the benefit of and bind the LESSOR and LESSEE respectively, their successors in office, successors in interest and assigns.

27.   <u>APPLICABLE LAW</u>.      This Third Amendment and Restatement of Lease Agreement is being executed and is intended to be performed in the State of Arizona, and shall be enforced and construed according to the laws of that state.

IN WITNESS WHEREOF, the parties have executed this Third Amendment and Restatement of Lease Agreement as of the date first above written.

LESSOR:                          CITY OF KINGMAN, a municipal
                                 corporation

                                 By _Carol S. Anderson_
                                 CAROL ANDERSON, Mayor

Attest:

_Charlene Ware_
CHARLENE WARE, Clerk

LESSEE:                          MOHAVE COUNTY AIRPORT AUTHORITY, INC.,
                                 an Arizona non-profit corporation

                                 By _Hal Johnson_
                                 HAL JOHNSON, President

```
STATE OF ARIZONA        )
                        )  ss.
COUNTY OF MOHAVE        )
```

        The foregoing Third Amendment and Restatement of Lease Agreement was acknowledged before me, the undersigned notary public, this 22ND day of _January_, 1992, by CAROL ANDERSON, Mayor of the CITY OF KINGMAN.

                                _Charlene M. Ware_
                                Notary Public

My Commission Expires:

    4-4-95


```
STATE OF ARIZONA        )
                        )  ss.
COUNTY OF MOHAVE        )
```

        The foregoing Third Amendment and Restatement of Lease Agreement was acknowledged before me, the undersigned notary public, this 22ND day of _January_, 1992, by HAL JOHNSON, President of MOHAVE COUNTY AIRPORT AUTHORITY, INC.

                                _Charlene M. Ware_
                                Notary Public

My Commission Expires:

    4-4-95

# EXHIBIT____

**KINGMAN AIRPORT REMNANT PARCEL:**

That portion of Sections 14, 23, 26, 27 and 34 lying Southeasterly of the Southeasterly Right-of-Way line for the A.T.& S.F. Railroad Company 200 foot wide Right-of-Way.

That portion of Section 33 lying Southeasterly of the Southeasterly Right-of-Way line for "BERRY STATION" of the A.T.& S.F. Railroad Company.

The S 1/2 of the SW 1/4 and the S 1/2 of the N 1/2 of the SW 1/4 and the S 1/2 of the N 1/2 of the N 1/2 of the SW 1/4 of Section 24; all of Sections 25, 35 and 36. All of the above Sections within T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.

GROSS AREA = 4009.04 Acres, More or Less.

EXCEPT the following described Parcels:

**GENERAL CABLE PARCEL:**

A Parcel containing 56.104 Acres, more or less, being a part of Section 26 and a part of Section 27, Township 22 North, Range 16 West, G.& S.R.M., Mohave County, Arizona , said Parcel being more particularly described as follows:

Beginning at a point which lies S.73°19'19"W., a distance of 3753.47 feet from the Northeast Corner of said Section 26, Thence N.45°00'W., a distance of 930.00 feet; Thence Northwesterly along the arc of a curve, concave to the Southwest and having a radius of 175.00 feet and a central angle of 90°00', an arc distance of 274.89 feet; Thence S.45°00'W., a distance of 844.16 feet; Thence Southwesterly along the arc of a curve, concave to the Southwest and having a radius of 849.95 feet and a central angle of 6°44', an arc distance of 99.88 feet; Thence S.38°16'W., a distance of 1060.84 feet; Thence Southwesterly along the arc of a curve, having a radius of 20.00 feet and a central angle of 83°16' an arc distance of 29.07 feet; Thence S.45°00'E., a distance 397.82 feet; Thence N.45°00'E., a distance of 41.00 feet; Thence S.45°00'E., a distance of 100.25 feet; Thence S.45°00'W., a distance of 41.00 feet; Thence S.45°00'E., a distance of 486.82 feet; Thence Southeasterly along the arc of a curve concave to the Northeast and having a radius of 20.00 feet and a central angle of 90°00' an arc distance of 31.42 feet; Thence N.45°00'E., a distance of 2120 feet; Thence Northeasterly along the arc of a curve concave to the Northwest and having a radius of 50.00 feet and a central angle of 90°00', an arc distance of 78.54 feet to the Point of Beginning.

1

PARCEL II-I as delineated on Record of Survey: Book 4, Page 39 recorded September 11, 1986 at fee number 86-37849 records of Mohave County, Arizona situate in the NE 1/4 of Section 26, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.   Area = 2.50 Acres, More or Less.

PARCEL IX-C as delineated on Record of Survey: Book 4, Page 40 recorded September 11, 1986 at fee number 86-37850 records of Mohave County, Arizona situate in the N 1/2 of Section 26, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.   Area = 6.92 Acres, More or Less.

PARCEL VI-A as delineated on Record of Survey: Book 4, Page 37 recorded July 24, 1986 at fee number 86-30962 records of Mohave County, Arizona situate in the SW 1/4 of Section 23 and the NW 1/4 of Section 26, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.   Area = 5.00 Acres, More or Less.

PARCEL IX-B as delineated on Record of Survey: Book 4, Page 15 recorded February 25, 1986 at fee number 86-6518 records of Mohave County, Arizona situate in the N 1/2 of Section 26, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.   Area = 15.71 Acres, More or Less.

PARCELS IV-I, J, K, L as delineated on Record of Survey: Book 3, Page 14 recorded July 18, 1983 at fee number 83-26900 records of Mohave County, Arizona situate in the SW 1/4 of Section 26, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.   Area = 5.02 Acres, More or Less.

PARCELS IV-G, H as delineated on Record of Survey: Book 3, Page 12 recorded July 18, 1983 at fee number 83-26898 records of Mohave County, Arizona situate in Section 26, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.   Area = 10.70 Acres, More or Less.

PARCEL IV-F as delineated on Record of Survey: Book 3, Page 11 recorded July 18, 1983 at fee number 83-26898 records of Mohave County, Arizona situate in Section 26, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.   Area = 12.84 Acres, More or Less.

PARCELS IV-R, S as delineated on Record of Survey: Book 3, Page 96 recorded August 8, 1985 at fee number 85-28343 records of Mohave County, Arizona situate in the NW 1/4 of Section 26, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.   Area = 4.63 Acres, More or Less.

PARCEL II-K as delineated on Record of Survey: Book 5, Page 10 recorded March 2, 1988 at fee number 88-8134 records of Mohave County, Arizona situate in the NE 1/4 of Section 26, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.   Area = 2.15 Acres, More or Less.

PARCEL IV-E as delineated on Record of Survey: Book 5, Page 13 recorded March 2, 1988 at fee number 88-8137 records of Mohave County, Arizona situate in Section 27, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.  Area = 4.61 Acres, More or Less.

PARCEL IX-F as delineated on Record of Survey: Book 5, Page 28 recorded May 31, 1988 at fee number 88-22059 records of Mohave County, Arizona situate in the NE 1/4 of Section 26, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.  Area = 10.00 Acres, More or Less.

PARCEL II-L as delineated on Record of Survey: Book 5, Page 30 recorded May 31, 1988 at fee number 88-22061 records of Mohave County, Arizona situate in the SE 1/4 of Section 26, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.  Area = 1.50 Acres, More or Less.

PARCEL IV-O-A-A as delineated on Record of Survey: Book 4, Page 77 recorded July 7, 1987 at fee number 87-27966 records of Mohave County, Arizona situate in Section 26, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.  Area = 2.00 Acres, More or Less.

PARCELS IV-A, B, C as delineated on Parcel Plat: Book 1, Page 59 recorded April 23, 1979 at fee number 79-12670 and Parcel Plat: Book 1, Page 72 recorded April 9, 1980 at fee number 80-12574 records of Mohave County, Arizona situate in Sections 26 and 27, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.  Area = 60.52 Acres, More or Less.

PARCEL V-J as delineated on Record of Survey: Book 4, Page 6 recorded December 5, 1985 at fee number 85-42277 records of Mohave County, Arizona situate in Section 27, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.  Area = 0.86 Acres, More or Less.

PARCEL V-I as delineated on Record of Survey: Book 3, Page 99 recorded August 8, 1985 at fee number 85-28346 records of Mohave County, Arizona situate in Section 27, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.  Area = 0.38 Acres, More or Less.

PARCEL IV-Q  as delineated on Record of Survey:  Book 3, Page 86 recorded May 23, 1985 at fee number 85-18341 records of Mohave County, Arizona situate in Section 26, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.  Area = 2.00 Acres, More or Less.

PARCEL IV-N as delineated on Record of Survey: Book 3, Page 49 recorded July 27, 1984 at fee number 84-28073 records of Mohave County, Arizona situate in Sections 26 and 27, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.  Area = 9.43 Acres, More or Less.

PARCEL II-F as delineated on Record of Survey: Book 3, Page 17 recorded July 18, 1983 at fee number 83-26903 records of Mohave

County, Arizona situate in the NE 1/4 of Section 26, T.22 N., R.16 W., Mohave County, Arizona.  Area = 3.50 Acres, More or Less.

PARCELS II-A, C, D as delineated on Record of Survey: Book 3, Page 15 recorded July 18, 1983 at fee number 83-26901 records of Mohave County, Arizona situate in the NE 1/4 of Section 26, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.  Area = 4.48 Acres, More or Less.

PARCEL IX-D-C as delineated on Record of Survey: Book 5, Page 38 recorded August 23, 1988 at fee number 88-35231 records of Mohave County, Arizona situate in the N 1/2 of Section 26, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.  Area = 2.00 Acres, More or Less.

PARCEL IX-H as delineated on Plat recorded August 23, 1988 at fee number 88-35230 records of Mohave County, Arizona situate in the SE 1/4 of Section 23 and the NE 1/4 of Section 26, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.  Area = 36.14 Acres, More or Less.

PARCEL II-E as delineated on Record of Survey: Book 3, Page 15 recorded July 18, 1983 at fee number 83-26901 records of Mohave County, Arizona situate in the NE 1/4 of Section 26, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.  Area = 0.76 Acres, More or Less.

PARCEL II-H-A as delineated on Record of Survey: Book 6, Page 88 recorded November 2, 1990 at fee number 90-80346 records of Mohave County, Arizona situate in the NE 1/4 of Section 26, T.22 N., R.16 W., Mohave County, Arizona.  Area = 1.10 Acres, More or Less.

PARCEL IV-U-A as delineated on Record of Survey: Book 6, Page 1 recorded February 8, 1990 at fee number 90-8832 records of Mohave County, Arizona situate in the SW 1/4 of Section 26, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.  Area = 5.07 Acres, More or Less.

PARCEL IX-E-A as delineated on Record of Survey: Book 6, Page 96 recorded December 10, 1990 at fee number 90-83621 records of Mohave County, Arizona situate in the SE 1/4 of Section 23 and the NE 1/4 os Section 26, T.22 N., R.16 W., G.& S.R.M., Mohave county, Arizona.  Area = 2.48 Acres, More or Less.

PARCEL VI-E-A as delineated on Record of Survey: Book 6, Page 2 recorded February 8, 1990 at fee number 90-8833 records of Mohave County, Arizona situate in the SW 1/4 of Section 23 and the NW 1/4 of Section 26, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.  Area = 40.00 Acres, More or Less.

PARCEL IV-M-A as delineated on Record of Survey: Book 7, Page 90 recorded October 21, 1991 at fee number 91-56920 records of Mohave

County, Arizona situate in the NW 1/4 of Section 26, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.  Area = 2.00 Acres, More or Less.

PARCEL II-O-A as delineated on Record of Survey: Book 6, Page 40 recorded June 8, 1990 at fee number 90-38173 records of Mohave County, Arizona situate in the E 1/2 of Section 26, T.22 N., R.16 W., G.& S.R.M., Mohave county, Arizona.  Area = 2.00 Acres, More or Less.

PARCEL II-N-A as delineated on Plat recorded October 21, 1991 at fee number 91-56921 records of Mohave County, Arizona situate in the E 1/2 of Section 26, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.  Area = 0.41 Acres, More or Less.

PARCEL II-B-B as delineated on Record of Survey: Book 5, Page 73 recorded September 7, 1989 at fee number 89-47674 records of Mohave County, Arizona situate in the NE 1/4 of the Section 26, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.  Area = 0.64 Acres, More or Less.

PARCEL IV-S as delineated on Record of Survey: Book 3, Page 96 recorded August 8, 1985 at fee number 85-28343 records of Mohave County, Arizona situate in the NW 1/4 of Section 26, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona.  Area = 2.00 Acres, More or Less.

GROSS AREA OF THE EXCEPTIONS = 310.43 Acres, More or Less.

NET AREA OF THE PARCEL DESCRIBED = 3698.61 Acres, More or Less.

AVIGATION EASEMENTS:

PARCEL NO. 1:

    A portion of the SE 1/4 of Section 24, T.22 N., R.16 W., G.& S.R.M., Mohave County, Arizona being more particularly described as follows:

    COMMENCING at the S 1/4 Corner for said Section 24 being a 1" ODIP W/USGLO Brass Cap having Arizona Coordinate System, West Zone values of X=445945.18; Y=1553029.04; thence along the South line of said SE 1/4 S.89°49'47"E., 415.90 feet (Basis of Bearings: Grid North said West Zone and distances are ground to obtain grid multiply by 0.999775) to the point of beginning; thence N.37°59'50"E., 659.58 feet; thence S.44°52'39"E., 737.40 feet to a point in the aforementioned South line of said SE 1/4 of Section 24; thence along said South line N.89°49'47"W., 926.36 feet to the point of beginning.  This parcel encumbers 5.54 Acres, More or Less.

PARCEL NO. 2:

The CLEAR ZONE AVIGATION EASEMENT recorded on November 15, 1977, in Book 428 of Official Records, Pages 214-219, records of Mohave County, Arizona.  This parcel encumbers 4.64 Acres, More or Less.



EXHIBIT "B"
Page 1

## F.A.A. PROVISIONS

A.    The LESSEE, for itself, its personal representatives, successors in interest and assigns, as a part of the consideration hereof, does hereby covenant and agree as a covenant running with the land that in the event facilities are constructed, maintained or otherwise operated on the said property described in this Lease for a purpose for which a Department of Transportation program or activity is extended or for another purpose involving the provision of similar services or benefits, the LESSEE shall maintain and operate such facilities and services in compliance with all other requirements imposed pursuant to Title 49, Code of Federal Regulations, DOT, Subtitle A, Office of the Secretary, Part 21, Nondiscrimination in Federally-Assisted Programs of the Department of Transportation - Effectuation of Title VI of the Civil Rights Act of 1964, and as said Regulations may be amended.

B.    The LESSEE, for itself, its personal representatives, successors in interest and assigns, as a part of the consideration hereof, does hereby covenant and agree as a covenant running with the land that  (1) no person on the grounds of race, color or national origin shall be excluded from participation in, denied the benefits of, or be otherwise subjected to discrimination in the use of said facilities, (2) that in the construction of any improvements on, over or under such land and the furnishings of services thereon, no person on the grounds of race, color or national origin shall be excluded from participating in, denied the benefits of, or otherwise be subjected to discrimination, (3) that the LESSEE shall use the premises in compliance with all other requirements imposed by or pursuant to Title 49, Code of Federal Regulations, Department of Transportation, Subtitle A, Office of the Secretary, Part 21, Nondiscrimination in Federally-Assisted Programs of the Department of Transportation - Effectuation of Title VI of the Civil Rights Act of 1964, and as said Regulations may be amended.

C.    That in the event of breach of any of the above nondiscrimination covenants, LESSOR shall have the right to terminate the Lease and to re-enter and repossess said land and the facilities thereon, and hold the same as if said Lease had never been made or issued.  This provision does not become effective until the procedures of 49 CFR Part 21 are followed and completed, including expiration of appeal rights.

D.    LESSEE shall furnish accommodations and/or services on a fair, equal and not unjustly discriminatory basis to all users thereof and it shall charge fair, reasonable and not unjustly

EXHIBIT "B"
Page 2

discriminatory prices for each unit of service, PROVIDED THAT the LESSEE may be allowed to make reasonable and nondiscriminatory discounts, rebates or other similar types of price reductions to volume purchases.

E.    Noncompliance with Provision D. above shall constitute a material breach thereof and, in the event of such noncompliance, the LESSOR shall have the right to terminate this Lease and the estate hereby created without liability therefor or, at the election of the LESSOR or the United States, either or both said governments shall have the right to judicially enforce Provisions.

F.    LESSEE agrees to insert the above five provisions in any Lease Agreement by which said LESSEE grants a right or privilege to any person, firm or corporation to render accommodations and/or services to the public on the premises herein leased.

G.    LESSEE assures that it will undertake an affirmative action program as required by 14 CFR Part 152, Subpart E, to insure that no person shall on the grounds of race, creed, color, national origin or sex be excluded from participating in any employment activities covered in 14 CFR Part 152, Subpart E.   LESSEE assures that no person shall be excluded on these grounds from participating in or receiving the services or benefits of any program or activity covered by this subpart.   LESSEE assures that it will require that its covered suborganizations provide assurances to the LESSEE that they similarly will undertake affirmative action programs and that they will require assurances from their suborganizations, as required by 14 CFR 152, Subpart E, to the same effort.

H.    LESSOR reserves the right to further develop or improve the landing area of the Airport as it sees fit, regardless of the desires or view of the LESSEE, and without interference or hindrance.

I.    LESSOR reserves the right, but shall not be obligated to the LESSEE, to maintain and keep in repair the landing area of the Airport and all publicly-owned facilities of the Airport, together with the right to direct and control all activities of the LESSEE in this regard.

J.    This Lease shall be subordinate to the provisions and requirements of any existing or future agreement between the LESSOR and the United States, relative to the development, operation or maintenance of the Airport.

K.    There is hereby reserved to the LESSOR, its successors and assigns, for the use and benefit of the public, a right of flight for the passage of aircraft in the airspace above the surface of the premises herein leased.   This public right of flight shall include the right to cause in said airspace any noise inherent in the operation of any aircraft used for navigation or

EXHIBIT "B"
Page 3

flight through the said airspace or landing at, taking off from or operation of the Kingman Airport.

L.    LESSEE agrees to comply with the notification and review requirements covered in Part 77 of the Federal Aviation Regulations in the event future construction of a building is planned for the leased premises, or in the event of any planned modification or alteration of any present or future building or structure situated on the leased premises.

M.    The LESSEE, by accepting this Lease, expressly agrees for itself, its successors and assigns, not to erect nor permit the erection of any structure or object, nor permit the growth of any tree on the land leased hereunder above a mean sea level elevation of 3,520 feet.  In the event the aforesaid covenants are breached, the LESSOR reserves the right to enter upon the land leased hereunder and to remove the offending structure or object and cut the offending tree, all of which shall be at the expense of LESSEE.

N.    The LESSEE, by accepting this Lease, agrees for itself, its successors and assigns, not to make use of the leased premises in any manner which might interfere with the landing and taking off of aircraft from the Kingman Airport or otherwise constitute a hazard.  In the event the aforesaid covenant is breached, the LESSOR reserves the right to enter upon the premises hereby leased and cause the abatement of such interference at the expense of LESSEE.

O.    It is understood and agreed that nothing herein contained shall be construed to grant or authorize the granting of an exclusive right within the meaning of Section 308a of the Federal Aviation Act of 1958 (49 U.S.C. 1349).

P.    This Lease and all the provisions hereof shall be subject to whatever right the United States Government now has or in the future may have or acquire, affecting the control, operation, regulation and taking over of said Airport or the exclusive or nonexclusive use of the Airport by the United States during the time of war or national emergency.

---

## EXHIBIT "C"

### INSTRUMENT OF RELEASE

WHEREAS, the UNITED STATES OF AMERICA, acting by and through the General Services Administrator, under and pursuant to the powers and authority contained in the Federal Property and Administrative Service Act of 1949 (63 Stat. 377) and the Surplus Property Act of 1944 (58 Stat. 765), as amended, by instrument entitled "Instrument of Transfer" and dated November 28, 1949, did remise, release, and forever quitclaim to the County of Mohave, Arizona, its successors and assigns, all rights, title and interests of the United States in and to certain property known as the Kingman Municipal Airport subject to certain conditions, reservations, exceptions, and restrictions; and

WHEREAS, the County of Mohave, Arizona, has requested the Administrator of the Federal Aviation Agency to release a 264.8 acre parcel of land hereinafter described from all conditions, reservations, and restrictions contained in said "Instrument of Transfer" to permit the sale of said 264.8 acre parcel and has by appropriate resolution dated April 15, 1962, obligated itself to devote the proceeds from the sale of said property exclusively for the development, improvement, operation, or maintenance of the Kingman Municipal Airport; and

WHEREAS, the Administrator of the Federal Aviation Agency, under and pursuant to the powers and authority contained in Public Law 311 (63 Stat. 700) is authorized to grant a release from any of the terms, conditions, reservations, and restrictions contained in, and to convey, quitclaim, or release any right or interest reserved to the United States by any instrument of disposal under which surplus airport property was conveyed to a non-Federal public agency pursuant to Section 13 of the Surplus Property Act of 1944 (58 Stat. 765); and

WHEREAS, the Administrator of the Federal Aviation Agency has determined that said 264.8 acre parcel no longer serves the purpose for which it was made subject to such terms, conditions, reservations, and restrictions.

NOW, THEREFORE, in consideration of the benefits to accrue to the United States and to civil aviation, the UNITED STATES OF AMERICA, acting by

Case 3:75-cv-00627-GLR Document 27 Filed 01/14/22 Page 27 of 113

14

described real property from the conditions, reservations, and restrictions
of said "Instrument of Transfer" dated November 28, 1949, between the United
States and the County of Mohave, Arizona:

Beginning at a point which lies 38°46' W, a distance of
1835.0 feet from the northeast corner of Section 26,
Township 22 North, Range 16 West, G.&S.R.M., Mohave County,
Arizona; thence N 45°00' W, a distance of 1100.0 feet; thence
S 45°00' W, a distance of 1450.0 feet; thence N 45°00' W, a
distance of 2685.3 feet to the point of intersection with the
southeasterly right-of-way boundary of the A.T.&S.F. Railroad;
thence N 38°18' E along said right-of-way boundary, a distance
of 3323.1 feet; thence S 45°00' E, a distance of 4173.3 feet;
thence S 45°00' W, a distance of 1850.0 feet to the point of
beginning. A Parcel containing 264.8 Acres, more or less.

This release is granted subject to the following conditions:

That complete description of said property will be publicly advertised
and sold to the highest bidder; however, if the highest bid received is not
considered to be the fair market value of said property, it may be withdrawn
from sale and disposed of by negotiated sale.

That the instrument used to convey the hereinabove described property
shall expressly include the following reservations by the Grantor:

1.  There is hereby reserved to the Grantor, its successors and
    assigns, for the use and benefit of the public, a right of
    flight for the passage of aircraft in the airspace above the
    surface of the premises herein conveyed, together with the
    right to cause in said airspace such noise as may be inherent
    in the operation of aircraft, now known or hereafter used
    for navigation of or flight in the air, using said airspace
    or landing at, taking off from or operating on the Kingman
    Municipal Airport.

2.  The Grantee by accepting this conveyance expressly agrees
    for itself, successors, and assigns that it will not erect
    nor permit the erection of any structure or object nor
    permit the growth of any tree on the land conveyed hereunder

release any right [   ] terest reserved to the United [   ] s by any instrument of disposal under which surplus airport property was conveyed to a non-Federal public agency pursuant to Section 13 of the Surplus Property Act of 1944 (58 Stat. 765); and

WHEREAS, the Administrator of the Federal Aviation Agency has determined that said 264.8 acre parcel no longer serves the purpose for which it was made subject to such terms, conditions, reservations, and restrictions.

NOW, THEREFORE, in consideration of the benefits to accrue to the United States and to civil aviation, the UNITED STATES OF AMERICA, acting by and through the Administrator of the Federal Aviation Agency under and pursuant to the powers and authority contained in Public Law 311 (63 Stat. 700) and applicable rules, regulations, and orders, hereby releases the following

Exhibit A



1.  There is hereby reserved to the Grantor, its successors and
    assigns, for the use and benefit of the public, a right of
    flight for the passage of aircraft in the airspace above the
    surface of the premises herein conveyed, together with the
    right to cause in said airspace such noise as may be inherent
    in the operation of aircraft, now known or hereafter used
    for navigation of or flight in the air, using said airspace
    or landing at, taking off from or operating on the Kingman
    Municipal Airport.

2.  The Grantee by accepting this conveyance expressly agrees
    for itself, successors, and assigns that it will not erect
    nor permit the erection of any structure or object nor
    permit the growth of any tree on the land conveyed hereunder
    above a mean sea level elevation of 3483 feet.  In the event
    the aforesaid covenant is breached the Grantor reserves the
    right to enter on the land conveyed hereunder and to remove
    the offending structure or object and to cut the offending
    tree, all of which shall be at the expense of the Grantee.

3.  The Grantee by accepting this conveyance expressly agrees
    for itself, successors, and assigns that it will not make use

-2-

15

of the said property in any manner which might interfere with
the landing and taking off of aircraft from said Kingman
Municipal Airport or otherwise constitute an airport hazard.
In the event the aforesaid covenant is breached the Grantor
reserves the right to enter on the land conveyed hereunder
and cause the abatement of such interference at the expense
of the Grantee.

4. Scale

IN WITNESS WHEREOF, the UNITED STATES OF AMERICA has caused this
Instrument to be executed as of the 1st day of June, 1962.

UNITED STATES OF AMERICA
The Administrator of the Federal Aviation Agency

By Charles O Winger

Chief, Airport Division, Western Region

STATE OF CALIFORNIA )
                     )ss
COUNTY OF LOS ANGELES)

On this 1st day of _____, 1962, before me
_____, a Notary Public in and for the County of
Los Angeles, State of California, personally appeared Charles O Winger
known to me to be the Chief, Airports Division, Western Region, Federal Aviation
Agency, and known to me to be the person whose name is subscribed to the within
Instrument and acknowledged that he executed the same on behalf of the
Administrator of the Federal Aviation Agency and the United States of America.

WITNESS my hand and official seal.

_____
Notary Public in and for the County
of Los Angeles, State of California

STATE OF CALIFORNIA )
                     )ss
COUNTY OF LOS ANGELES)

On this *1st* day of _____, 1962, before me

_____, a Notary Public in and for the County of

Los Angeles, State of California, personally appeared _____

known to me to be the Chief, Airports Division, Western Region, Federal Aviation

Agency, and known to me to be the person whose name is subscribed to the within

Instrument and acknowledged that he executed the same on behalf of the

Administrator of the Federal Aviation Agency and the United States of America.

WITNESS my hand and official seal.

_____
Notary Public in and for the County
of Los Angeles, State of California

My Commission Expires:

_March 15, 1966_

Filed and Recorded at Request of _____

AUG 14 1962 ___ Min. Past ___ o'clock ___ M.

in book 127 of DEEDS _____ Page 10-15 ___

Records of Mohave County, Arizona.

By_____                     _____
        Deputy Recorder                          Recorder

~3~

114763

## EXHIBIT "D"

AGREEMENT BETWEEN UNITED STATES

OF AMERICA AND CITY OF KINGMAN


THIS AGREEMENT, made this 19th day of December, 1988, by the UNITED STATES OF AMERICA, acting by and through the FEDERAL AVIATION ADMINISTRATION, as represented by the Chief, Airports Division, Western Region (or other appropriate official), hereinafter referred to as "FAA", and the CITY OF KINGMAN, a municipal corporation functioning under the laws of the State of Arizona, hereinafter referred to as "CITY".

## W I T N E S S E T H:

WHEREAS, Resolution No. 1271 was adopted by City Council of the City of Kingman on the 5th day of December, 1988, a copy of which is attached hereto and is hereby incorporated herein and made a part hereof by reference; and

WHEREAS, Resolution No. 1271 obligates the CITY to expend an amount equal to the proceeds that could or will be realized from the sale or disposition of any portion of land at the Kingman Airport for specific items of improvement at the airport or other specified public airports within Five (5) Years and further

authorizes the Mayor of the City of Kingman to enter into this Agreement in behalf of the City of Kingman.

NOW, THEREFORE, in consideration of the covenants and agreements contained herein, FAA and CITY mutually agree as follows:

## ARTICLE I

Pursuant to the authority contained in Public Law 81-311 and Part 155 of the Federal Aviation Regulations, FAA shall deliver to CITY an instrument of release releasing a portion of that real property covered by the "Instrument of Transfer" dated the 28th day of November, 1949, in effect at the Kingman Airport, formerly the Mohave County Airport, from all reservations and restrictions found in said Instrument of Transfer. Said portion of real property is more fully described by Exhibit "A" attached hereto and by reference made a part hereof.

## ARTICLE II

The CITY shall expend an amount equal to the net proceeds derived or which could be derived from the sale of any portion of the released real property and otherwise perform in accordance with all the

-2-

requirements of Resolution No. 1271, dated December 5, 1988, as attached hereto and by reference incorporated herein and made a part hereof.

## ARTICLE III

The CITY shall submit to FAA a current appraisal for each portion of the released real property prior to the sale of each portion for concurrence by FAA in the appraised value of that portion, and after each sale the CITY shall advise FAA of the amount for which that portion sold.

## ARTICLE IV

Incident to performing under Article II above, the CITY agrees that for purposes of this Agreement, the terms and conditions of Resolution No. 1271, dated December 5, 1988, as attached hereto are controlling and shall remain in full force and effect throughout the life of this Agreement.

## ARTICLE V

This Agreement shall remain in effect until FAA determines that the CITY has complied with all the terms thereof and FAA so informs the CITY.

-3-

## ARTICLE VI

The parties hereto agree that this Agreement is personal and does not run with the land.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals the day and year first above written.

UNITED STATES OF AMERICA    CITY OF KINGMAN
The Administrator of the
Federal Aviation Adminis-
tration

By_____    By_____
  Chief, Airports Div.      Carol Anderson, Mayor
  Western Region

-4-

CITY OF KINGMAN, ARIZONA
RESOLUTION NO. 1601

A RESOLUTION BY THE MAYOR AND COMMON COUNCIL OF THE
CITY OF KINGMAN; AUTHORIZING THE MAYOR TO EXECUTE A
"THIRD AMENDMENT AND RESTATEMENT" OF THE LEASE
AGREEMENT BETWEEN THE CITY AND THE MOHAVE COUNTY
AIRPORT AUTHORITY, INC., CONCERNING THE KINGMAN
AIRPORT AND INDUSTRIAL PARK.

WHEREAS, the City currently leases the Kingman Airport and
Industrial Park to the Mohave County Airport Authority, Inc.,
pursuant to a Lease Agreement dated as of May 21, 1979 (as
previously amended on July 2, 1979 and November 3, 1986); and

WHEREAS, the Airport Authority has requested that the Lease
Agreement be further amended to provide for a new term to run from
January 20, 1992 until January 19, 2017; to add to the leased
premises certain parcels in the industrial park which have been
reacquired by the City; and to make other minor changes which are
of a "housekeeping" nature; and

WHEREAS, the Airport Authority has proposed a Third Amendment
and Restatement of Lease Agreement in the form attached hereto as
Exhibit A; and

WHEREAS, the Mayor and Council have been advised by the City
Attorney that the Third Amendment and Restatement is in proper form
and find that the execution of same would be in the best interests
of the City,

NOW, THEREFORE, BE IT RESOLVED by the Mayor and Common Council
that the Mayor is hereby authorized to execute on behalf of the
City a Third Amendment and Restatement of Lease Agreement in the
form attached hereto as Exhibit A.

PASSED AND ADOPTED by the Mayor and Common Council of Kingman,
Arizona, on January 20, 1992.

CAROL S. ANDERSON, MAYOR

ATTEST:

CHARLENE WARE, CITY CLERK

APPROVED AS TO FORM:

LANCE B. PAYETTE, CITY ATTORNEY

THIRD AMENDMENT AND RESTATEMENT
OF LEASE AGREEMENT

THIS THIRD AMENDMENT AND RESTATEMENT OF LEASE AGREEMENT is made this _____ day of _____, 1992, by and between the CITY OF KINGMAN, a municipal corporation functioning under the laws of the State of Arizona, (hereinafter referred to as "LESSOR") and the MOHAVE COUNTY AIRPORT AUTHORITY, INC., a non-profit corporation organized under the laws of the State of Arizona (hereinafter referred to as "LESSEE").

WHEREAS, MOHAVE COUNTY and LESSEE entered into a Lease Agreement dated May 21, 1979, whereby MOHAVE COUNTY leased to LESSEE the Kingman Airport; and

WHEREAS, MOHAVE COUNTY and LESSEE entered into addenda to the above-referenced Lease Agreement on July 2, 1979, and November 3, 1986; and

WHEREAS, MOHAVE COUNTY transferred and conveyed its ownership interest to that certain real property known as the Kingman Airport to the CITY OF KINGMAN on or about December 19, 1988; and

WHEREAS, LESSEE continues to lease the Kingman Airport from the CITY OF KINGMAN pursuant to the terms of the Lease Agreement dated May 21, 1979, as amended; and

WHEREAS, LESSOR has acquired title to several former Kingman Airport parcels to be added to that certain real property known as the Kingman Airport, all as described by Exhibit "A" hereto; and

WHEREAS, LESSOR and LESSEE are agreed that the improvement, development, operation and maintenance of the Kingman Airport and its expense will be in the public interest; and

WHEREAS, under the provisions of A.R.S. §2-301, et seq., LESSOR is authorized, among other things, to acquire, establish, construct, own, control, lease, equip, improve, maintain, operate and regulate airports; and

WHEREAS, under the provisions of A.R.S. §2-301, et seq., LESSOR is authorized to enter into agreements with a non-profit corporation for airport or air terminal purposes and for the operation and maintenance of airports, air terminals and uses incidental thereto; and

WHEREAS, LESSEE was formed as a non-profit corporation under A.R.S. §10-451, et seq., and A.R.S. §2-311, et seq., for the purpose of engaging in the promotion, establishment, development and maintenance of airports and adjacent property for the benefit of air transportation and commercial or industrial activities, for the general public benefit of the residents of Mohave County; and

WHEREAS, LESSOR and LESSEE desire to enter into a Third Amendment and Restatement of Lease Agreement for the Kingman Airport;

NOW THEREFORE, in consideration of the mutual covenants herein, the parties agree as follows:

1.   <u>LEASED PREMISES</u>.  LESSOR hereby leases to LESSEE and LESSEE does hereby lease from LESSOR for airport and air terminal purposes, and for all purposes related thereto, and for all purposes incidental thereto, and for the purpose of carrying on any other revenue-producing business in connection therewith, the property described by Exhibit A attached hereto and by reference made a part hereof.

2.   <u>TERM</u>.  The term for which the leased premises are leased shall commence on the 20th day of January, 1992, and shall expire on the 19th day of January, 2017, subject to the right of

2

renewal hereinafter set forth, unless said term is sooner terminated as hereinafter provided.

3. **OPTION TO RENEW.** LESSEE may, at its sole option, extend the term of this Third Amendment and Restatement of Lease Agreement for an additional period of twenty-five (25) years at the same rental and under the same terms and conditions as contained in this Third Amendment and Restatement of Lease Agreement, said option to be exercised prior to the expiration of the prime term by LESSEE giving notice in writing to LESSOR of its intention to renew, together with the payment of the rent required by Subparagraph 5.B. hereinbelow.

4. **SURRENDER OF PREMISES.** Upon expiration or sooner termination of the prime term of this Third Amendment and Restatement of Lease Agreement, or any renewal thereof, LESSEE covenants and agrees that it will give up, surrender and deliver to LESSOR the leased premises together with title to all buildings, structures and improvements added to the leased premises during the term of this Third Amendment and Restatement of Lease, as well as all personal property, furniture, fixtures and other equipment contained thereon and used in connection with the operation of said airport and airport terminal and purchased or acquired for said purposes.

5. **RENT.** As rent for the leased premises, LESSEE shall pay to LESSOR the following:

A. The sum of ONE DOLLAR ($1.00) for the prime term of this Lease, payable on or before January 31, 1992.

B. The sum of ONE DOLLAR ($1.00) for the successive twenty-five (25) year term, if renewed, subsequent to the expiration of the prime Lease, payable on or before January 1, 2017.

6. **REPAIRS.** LESSEE shall take care of the leased premises, together with all improvements, fixtures and personal

3

property thereon, whether now on the premises or hereafter added, and shall make all necessary repairs, inside and outside, structural or otherwise, so as to maintain and preserve them in good order and condition and keep the leased premises as an operating airport and air terminal in good condition, ordinary wear and tear excepted.

7.   <u>EXPENDITURES IN EXCESS OF TEN THOUSAND DOLLARS</u>.   In the erection, improvement and repair of all buildings, structures, works, runways, improvements, fixtures and personal property, and in furnishing supplies and materials for same or for any other use by LESSEE, when the expenditure required exceeds the sum of TEN THOUSAND DOLLARS ($10,000.00), LESSEE shall advertise for bids for the work contemplated and for furnishing such supplies and materials, and ask for sealed proposals.  Any such contract shall be let to the lowest responsible bidder.  LESSEE may, however, reject any and all bids submitted and may readvertise for bids.  The TEN THOUSAND DOLLAR ($10,000.00) minimum established by this paragraph has been based on the requirements set forth in A.R.S. §41-2535.  In the event A.R.S. §41-2535 is modified during the term of this Lease, or any renewal or extension thereof, the modified amount set forth therein shall be automatically substituted for the amount set forth herein.

8.   <u>ASSIGNMENT AND MORTGAGE</u>.   LESSEE shall not assign, mortgage, pledge, hypothecate or encumber this Third Amendment and Restatement of Lease Agreement, or any part thereof, or sublet the leased premises in its entirety.  LESSEE may sublet portions of the leased premises and may enter into other agreements with third persons for the use thereof and for such purpose.  Nothing contained in this paragraph shall prevent LESSEE from pledging in whole or in part the revenues of the airport and air terminal and adjacent lands after providing for operation and maintenance costs as security for the payment of bonds or other obligations issued, incurred or assumed for airport and air terminal purposes to or for the benefit of the holders of such bonds or other obligations, or from making such bonds or other obligations a lien upon such revenues.

9.   **ACCOUNTS.**   LESSEE agrees that LESSOR may, during reasonable times and hours, inspect LESSEE's books and records. LESSEE further agrees to furnish LESSOR, upon LESSOR's request, within a reasonable period of time, annual operating statements and detailed balance sheets, certified by a certified public accountant of the State of Arizona, at LESSOR's expense.

10.   **FINANCING AND DEVELOPMENT OF AIRPORT AND AIR TERMINAL.**   LESSEE shall be obligated to the extent it deems necessary to rehabilitate, expand, improve and develop the airport and air terminal, and shall have the right, in its discretion, to issue bonds and incur obligations and make expenditures for such purposes.  None of the bonds issued by LESSEE shall be a lien or charge upon the leased premises.  Title to the buildings, structures and additions made or added to the leased premises by LESSEE or any of its subtenants shall vest in LESSOR immediately upon annexation, except where leases, permits, licenses or other agreements provide the title thereto shall remain in the lessees, permittees or third persons.  Bonds issued or other obligations incurred or assumed by LESSEE for airport and air terminal purposes shall not be obliga- tions of LESSOR, and LESSEE shall have no power to pledge the credit of LESSOR in any way whatsoever.

11.   **OPERATING CONTRACTS AND SUBLEASES.**   LESSOR and LESSEE acknowledge that LESSEE has permitted subleases, permits, licenses, contracts and agreements related to the leased premises. LESSEE hereby acknowledges that it shall be responsible for and hold LESSOR harmless from all claims arising out of or in respect to all such subleases, permits, licenses, contracts and agreements, whether existing as of the date of this Third Amendment and Restatement of Lease Agreement or entered into hereafter. All rentals, fees and other payments due under said subleases, permits, licenses, contracts and agreements shall be payable to LESSEE.

12.   **OTHER CONTRACTS AND AGREEMENTS.**   This Third Amendment and Restatement of Lease Agreement and all subleases,

permits, licenses, contracts and agreements entered into by LESSEE shall be subject to the following requirements:

A. <u>Public Use of Airport</u>.  LESSEE agrees to operate the airport for the use and benefit of the public, to make available all airport facilities and services to the public without unjust discrimination, and to refrain from imposing or levying excessive, discriminatory or otherwise unreasonable charges or fees for any use of the airport or its facilities or for any airport services.

B. <u>Exclusive Use</u>.  It is understood and agreed that nothing herein contained shall be construed to grant or authorize the granting of any exclusive right within the meaning of Section 303 of the Civil Aeronautics Act of 1938, as amended.

C. <u>Maintenance of Landing Area</u>.  LESSOR reserves the right, but shall not be obligated to LESSEE, to develop or improve the landing area of the airport and all publicly-owned facilities of the airport.

D. <u>Development of Landing Area</u>.  LESSOR reserves the right, but shall not be obligated to LESSEE, to develop or improve the landing area and all publicly-owned air navigation facilities.

E. <u>Approach Protection</u>.  LESSOR reserves the right to take any action it considers necessary to protect the aerial approaches of the airport against obstruction, which in the opinion of LESSOR would limit the usefulness of the airport or constitute a hazard to aircraft.

F. <u>National Emergency</u>.  During the time of war or national emergency, LESSEE shall have the right to enter into an agreement with the United States government for military or naval use of part or all of the landing area, the publicly-owned air navigation facilities and/or other area facilities of the airport.  If any such agreement is executed, the provisions of this instrument, insofar as they are inconsistent with the provisions of the agreement with the government, shall be suspended.

G. <u>Subordination to Federal Agreements Generally</u>.  This Agreement shall be subordinate to the provision of any existing agreement between LESSOR and the United States, relative to the operation or maintenance of the airport, the execution of which has been or may be required as a condition precedent to the expenditure of federal funds for the development of the airport.

H. <u>Additional Federal Aviation Administration Regulations</u>.  LESSEE agrees to manage and operate the leased premises in accordance with Federal Aviation Administration

Regulations, attached hereto as Exhibit B and by reference made a part hereof.

13.   PROCEEDS FROM SALES OF REAL PROPERTY.   LESSOR hereby agrees to pay to LESSEE all proceeds which it receives arising out of each and every sale of real property which or at any time may be leased premises under the terms of this Third Amendment and Restatement of Lease Agreement or any renewal, extension or modification thereof.   LESSEE agrees to use said funds in a manner consistent with those agreements entered into between MOHAVE COUNTY and the UNITED STATES GOVERNMENT dated June 1, 1962, and December 19, 1988, copies of which are attached hereto as Exhibits C and D and by reference made a part hereof.

14.   INSURANCE.   LESSEE hereby undertakes and agrees to indemnify and save LESSOR harmless from any claims, causes of action or judgments by reason of personal injuries sustained by any person or persons, including death, in the leased premises, and for any claims for damage to property, and agrees to procure, from companies permitted to do business in the state of Arizona, such insurance as will protect LESSOR from any such claims, suits, demands or judgments which may arise from the operation, control or occupancy of the leased premises.   Such insurance shall provide a single limit of at least TEN MILLION DOLLARS ($10,000,000.00), or such amount as LESSOR may require, in any one occurrence.   LESSEE further agrees to procure insurance with extended coverage endorsement on all buildings, structures, equipment and fixtures in or upon the leased premises and used in connection with the operation and maintenance of the airport and air terminal.   Such policies shall cover the property to the extent of a minimum of the amount necessary to cover the interests of both LESSOR and LESSEE.   All policies shall provide that loss, if any, shall be payable to LESSEE, which shall hold the proceeds of all such insurance in a trust fund for the purpose of repairing or reconstructing any of the buildings, structures, equipment or fixtures damaged or destroyed by reason of any of the risks insured against by such policies or for the purpose of making other capital improvements to the airport or air terminal.   In the

event the proceeds of such insurance exceed the cost of any such repairs or reconstruction, or of the making of such capital improvements, such excess shall be paid to LESSOR. If LESSEE shall not commence such repairs or reconstruction, or other capital improvements, with one (1) year from the date of receipt of the roceeds of such insurance, the same shall be paid over to LESSOR. the event such proceeds shall be insufficient, then LESSEE shall make repairs, reconstruction or replacements at its own expense. Copies of all policies of insurance or certificates thereof shall be delivered to LESSOR and the premiums thereof shall be paid by LESSEE. All insurance shall jointly cover both LESSOR and LESSEE. Any additional insurance shall be at the sole cost of LESSEE.

15. <u>GOVERNMENT AID</u>. LESSOR agrees to cooperate with LESSEE, if so requested by LESSEE, in making any necessary applications for and in securing any and all governmental or other aid which may be obtainable for the airport and air terminal under any applicable laws, but LESSOR shall not be obligated to LESSEE to assume any financial liability or obligation in connection therewith.

16. <u>ADDITIONAL LANDS AND INTEREST THEREIN</u>. LESSOR shall immediately upon acquisition of any lands and improvements thereon or rights, easements or interest therein for use in extension of the airport or air terminal, or for use in expansion of the airport or air terminal, or for use in maintaining airplane beacons, guides or other aids to aviation, convey the same to LESSOR without consideration, and such property shall become part of the leased premises.

17. <u>CONDEMNATION OR ACQUISITION BY OTHERS</u>. In the event the leased premises or any part thereof, or the right and interest of LESSEE hereunder in or to the leased premises or any part thereof, shall be condemned, taken or acquired by a body having superior power of eminent domain, the compensation or award therefor shall be payable in accordance with the following provisions:

8

A.   Out of said compensation or award there shall be paid to LESSEE an amount equal to the sum of the following:

(1)   The amount required to redeem any of LESSEE's Bonds or to pay any of LESSEE's obligations issued or incurred for airport and air terminal purposes and outstanding at the time title vests in the condemning power at the earliest dates after such decree or judgment when any such bonds may be called for redemption or such obligations may be paid, or, if any such bonds or obligations are not subject to call or immediate payment, then the amount required to redeem or pay them at their maturity, less the following three (3) items:

(a)   The assets of any sinking fund established for redemption of any bonds or other obligations issued, incurred or assumed for airport and air terminal purposes, or any other public purposes, including interest thereon.

(b)   The proceeds remaining unexpended from the sale of any and all bonds or other obligations issued, incurred or assumed for airport and air terminal purposes.

(c)   Any cash set aside for redemption of bonds issued or the payment of any obligations incurred or assumed for airport and air terminal purposes.

(2)   The interest on any such bonds or obligations from the last interest payment date prior to the vesting of title in the condemning power up to the date of such call or maturity;

(3)   The call premium, if any;

(4)   Any unamortized funds of LESSEE, other than bonds or other obligation proceeds, or federal, state or city grants, expended for capital improvements at the airport or air terminal.

B.   The balance, if any, of such compensation or award shall be paid to LESSOR.

The amount paid to LESSEE as provided by this paragraph shall, together with any funds remaining unexpended for airport and air terminal purposes from the proceeds of any such bonds or obligations, be set aside in a special fund. If, after the payment or redemption of all said bonds and obligations with

interest and after the deduction of unamortized funds of LESSEE as aforesaid, there shall remain any balance in said special fund including income and appreciation thereon, LESSEE shall pay such balance to LESSOR.   If the whole of said leased premises or the right and interest of LESSEE in or to the same shall be payable thereunder.   If only part of the said leased premises or if the right and interest of LESSEE in or to the same shall be condemned, taken or acquired is so substantial as to make it impractical to proceed with the operation of the leased premises for airport or air terminal purposes, or other public purposes, then and in such event, no further rental shall be payable hereunder, provided, however, that possession of the leased premises remaining shall be promptly surrendered to LESSOR as if the term hereof shall have come to an end.   If, however, only a part of said leased premises or of the right and interest of LESSEE in or to the same shall be condemned, taken or acquired, and the remaining is sufficient to conduct the operation thereof for airport and air terminal purposes, or other established public purposes, then, and in such event, the obliga- tions of LESSEE under the provisions of this Agreement relating to rent as well as under other provisions of this Agreement shall continue and remain unaffected by such condemnation, taking or acquisition.

18.   __INSPECTION.__   LESSOR reserves the right of free access to all portions of the leased premises for the purpose of inspection, during reasonable times, upon reasonable notice.

19.   __PROMOTION OF AIRPORT ACTIVITIES AND SUPERVISION.__ LESSEE agrees to use diligent efforts to promote aeronautical activities at the airport and to secure persons who wish to base their aeronautical activities at the airport, either as fixed-base users or non-scheduled air carriers, or as lessees, and to promote other types of revenue-producing businesses and recreational activities at the airport.   LESSEE shall supervise the airport and all activities thereon in a businesslike and prudent manner, and shall cooperate with LESSOR in securing compliance by other airport

users of pertinent laws and regulations and of the terms of any agreement or lease relative to the use of the airport. LESSOR and LESSEE specifically acknowledge that the efforts of LESSEE and the expenditures of authorized funds by LESSEE to enhance the Industrial Park area of the leased premises is beneficial to the long-term growth of aviation activities on the leased premises.

20. <u>TERMINATION BY LESSOR.</u> LESSOR shall have the right to terminate this Third Amendment and Restatement of Lease Agreement in its entirety or to enforce this Agreement by any appropriate remedy immediately upon the happening of any of the following events:

A. Filing of a petition, voluntarily or involuntarily for the adjudication of LESSEE as bankrupt;

B. The making by LESSEE of any general assignment for the benefit of creditors;

C. The occurrence of any act which operates to permanently deprive LESSEE of the ability to perform its duties under this Agreement (except suspension of operations resulting from war or national emergency);

D. The abandonment of operations at the Airport by LESSEE;

E. The failure by LESSEE to perform, keep and observe any and all of the terms, covenants and conditions herein contained on the part of LESSEE to be performed, kept or observed after the expiration of ninety (90) days from the date written notice has been given to LESSEE by LESSOR to correct such default or breach, provided that LESSOR shall extend said period in the event LESSEE shall furnish satisfactory evidence that it is continuously and diligently attempting to correct such default or breach.

21. <u>TERMINATION BY LESSEE.</u> Should LESSOR fail to observe any provisions of this Agreement, written notice of such delinquency shall be given by LESSEE. If such delinquency continues uncured for ninety (90) days after receipt of such notice, LESSEE may elect to terminate this Agreement in its entirety or enforce this Agreement by any appropriate legal remedy.

22.   EFFECT OF THIRD AMENDMENT AND RESTATEMENT OF LEASE AGREEMENT.   LESSOR and LESSEE hereby acknowledge that this Third Amendment and Restatement of Lease Agreement supersedes in its entirety all of the Lease Agreement entered into between MOHAVE COUNTY and LESSEE dated May 21, 1979, as amended.

23.   NOTICE.   Any notice desired or required to be served by either party upon the other or whenever notice is provided for in this Agreement, it shall be given in writing and hand-delivered or mailed by certified mail, return receipt requested, to the party to whom addressed, as set forth hereinbelow:

LESSOR:          CITY OF KINGMAN
                 310 North Fourth Street
                 Kingman, AZ  86401

     With a copy to:

                 KINGMAN CITY ATTORNEY
                 310 North Fourth Street
                 Kingman, AZ  86401

LESSEE:          MOHAVE COUNTY AIRPORT AUTHORITY, INC.
                 7000 Flightline Drive
                 Kingman, AZ  86401

     With a copy to:

                 BRUNO, WEISBERG & BROOKS, P.C.
                 730 East Beale Street
                 Kingman, AZ  86401

Any party may change the address to which notice shall be delivered or mailed by notice duly given.

24.   NON-DISCRIMINATION.   LESSEE shall make no distinction among persons entitled to the benefit of use of the premises, nor shall it discriminate against any employee or applicant for employment on the premises, on the basis of race, color, creed, sex or national origin in accordance with state or federal law.   Any violation of this paragraph by LESSEE shall constitute a material

12

breach of this Agreement.

25.   **SEVERABILITY.**   If it is determined that any specific clause or provision is prohibited by law, then that provision shall be null and void but shall not affect the other provisions of this Agreement, which nevertheless remain in full force and effect.

26.   **CONTINUITY.**   This Agreement and each and all of the covenants, obligations and conditions hereof shall inure to the benefit of and bind the LESSOR and LESSEE respectively, their successors in office, successors in interest and assigns.

27.   **APPLICABLE LAW.**   This Third Amendment and Restatement of Lease Agreement is being executed and is intended to be performed in the State of Arizona, and shall be enforced and construed according to the laws of that state.

IN WITNESS WHEREOF, the parties have executed this Third Amendment and Restatement of Lease Agreement as of the date first above written.

LESSOR:                          CITY OF KINGMAN, a municipal
                                 corporation

                                 By _Carol S. Anderson_
                                    CAROL ANDERSON, Mayor

Attest:

_Charlene Ware_
CHARLENE WARE, Clerk

LESSEE:                          MOHAVE COUNTY AIRPORT AUTHORITY, INC.,
                                 an Arizona non-profit corporation

                                 By _Hal Johnson_
                                    HAL JOHNSON, President

STATE OF ARIZONA      )
                      )  ss.
COUNTY OF MOHAVE      )

   The foregoing Third Amendment and Restatement of Lease Agreement was acknowledged before me, the undersigned notary public, this 22ⁿᵈ day of January, 1992, by CAROL ANDERSON, Mayor of the CITY OF KINGMAN.

_____
      Notary Public

My Commission Expires:

  4-4-95
_____


STATE OF ARIZONA      )
                      )  ss.
COUNTY OF MOHAVE      )

   The foregoing Third Amendment and Restatement of Lease Agreement was acknowledged before me, the undersigned notary public, this 22ⁿᵈ day of January, 1992, by HAL JOHNSON, President of MOHAVE COUNTY AIRPORT AUTHORITY, INC.

_____
      Notary Public

My Commission Expires:

  4-4-95
_____

14

"EXHIBIT B"
## EQUIPMENT, PERSONAL PROPERTY and VEHICLES

| DESCRIPTION | SERIAL NUMBER |
|---|---|
| IBM Selectric Typewriter | 6799234 |
| IBM Wheelwriter 15 Series II | 11-N7304 |
| IBM Wheelwriter 10 Series II | 11-0043964 |
| Casio Adding Machine | FR-105S |
| Texas Instrument Adding Machine | TI504511 |
| Sharp Calculator | 2E257491 |
| Apple Macintosh Plus Computer with | |
|   Hard Disk and CMS Hard Disk | F617474 |
| Apple Laserwriter II Printer | CA750179MM6000 |
| Hewlett Packard Laserjet III Printer | 3026J75057 |
| Epson Computer | BEJ9QKMBH2335 |
| AST Modell 140 Computer | TW0044917 |
| AST Monochrome Monitor | 64505 |
| AST 101 Keyboard | 191912 |
| Hewlett Packard Desk Jet  Printer | 2852A40003 |
| Dictaphone | PK404709 |
| Pitney Bowes Postage Machine | 6742209/79181 |
| Minolta Copy Machine | 1672975 |
| Hughes Calihan Fax Machine | 334-010991 |
| RCA Colortrak 19" TV | 418400136 |
| RCA Colortrak 25" TV | 502570122 |
| Panasonic VHS VCR | A5MA93386 |
| 3 Wood Executive Desks | |
| 1 Secretarial Desk | |
| 1 Executive Credenza | |
| 1 12' Conference Table | |
| 10 Rolling Conference Chairs | |
| 11 Stackable Side Chairs | |
| 4 Executive Chairs | |
| 2 Secretarial Chairs | |
| 3'X4' Display Table | |
| 2'X3'X6' Solid Oak Video Cabinet | |
| 4  Four Drawer File Cabinets | |
| 3 Two Drawer File Cabinets | |
| 1 Four Shelf Wooden Shelf | |
| 1 Bendix King Radio | KY97AT50 |
| 1  TEL 66T Microphone | |
| 1 MED Electronic Weather Transmitter | Owned by NWS, assigned to Kingman |
| 1 Power Supply | Model PR4 |
| 1 Smart Modem | |
| 1 Altimeter | 1258 |
| 1 Wind Velocity/Direction Indicator | |

"EXHIBIT B"
## EQUIPMENT, PERSONAL PROPERTY and VEHICLES

| DESCRIPTION | SERIAL NUMBER |
|---|---|
| 1 Pencil Sharpener | 4106396 |
| 1 Electrical Light Control Panel | |
| 1 Siam Cat Binoculars 10 x 50 | |
| 1 Amos III 73 | Owned by NWS, assigned to Kingman |
| 1 Comsphere 344002 | Owned by BLM, assigned to Kingman |
| 1 Memotec SP 8000 | Owned by BLM, assigned to Kingman |
| 1 Workkbench | Owned by NWS, assigned to Kingman |
| 1 Refrigerator  Excellence Deluxe | |
| 1  Boston Papercutter | 2615 |
| 1 Helium Cylinder Tank | |
| 3 Fire Chemical Cylinder Tanks | |
| 2 Unicom Antennas | |
| 1 Wind Speed & Direction Machine | |
| 3 TenTech Hand Held Radios | 7716, 7837 & 7854 |
| 3 Terra Hand Held Radios | 009857, 009853 & 009887 |
| 1988 Pontiac Bonneville | License EJW-660 |
| 1989 Dodge Short Bed Pickup | License 4CN-623 |
| 1982 Dodge 3/4Ton Fire Truck | License PS 9568 |
| 1973 Dodge 3/4 Ton Pickup | License 4EP-525 |
| 1972 Chevy Dump Truck | CCE532V141560 |
| 1992 Case International Tractor w/Bucket & Mower Sweeper | 973628 |
| Water pump | 4320684 |
| Lawn Mower | 3140 |
| 2 Home Lite Weedeaters | |
| 1 16" Black & Decker Hedge Trimmer | 8127 |
| 1 18" Black & Decker Hedge Trimmer | 8134 |
| 1 Sprayer | 1858-T |
| Misc Hand Tools & Garden Tools | |
| Misc. Office Supplies | |

"EXHIBIT C"
## BANK ACCOUNTS

1.   Valley National Bank Checking Account No.      2074-0081

2.   Valley National Bank Savings Account No.      3081-4654

3.   Citibank Checking Account No.      058-024320

4.   Citibank Checking Account No.      058-025825

# "EXHIBIT D"
## ACCOUNTS RECEIVABLES

| | |
|---|---|
| Aero Flight, Inc. | $3,600.00 yearly |
| Airmark Group, Inc. (B) | 2,400.00 monthly |
| Airmark Group, Inc. (Rmp) | 1,000.00 monthly |
| Air'Zona Aircraft Service, Inc. | 385.30 monthly |
| Arizona Public Service | |
| Bullhead Sanitary District or Mohave County Airport Authority, Inc. | 11,800.00 total |
| BRAC of Mohave County/Budget Rent-A-Car | 250.00 monthly |
| Blumenthal, James | 3,000.00 yearly |
| B & R Pipe Fabrication, Inc. | |
| Ferrelgas | |
| Freiday Construction | 250.00 monthly |
| Hurley Trucking | 656.68 monthly |
| Kingman Aero Services | 300.00 monthly |
| Kingman 2005, Inc. | 10,000.00 quarterly |
| Mesa Airlines | 250.00 monthly |
| Morrison-Knudsen | 250.00 monthly |
| Nev/Cal Floor Covering | 300.00 monthly |
| Nigh Pack System | 757.66 monthly |
| Northern Energy/AZTEC Butane | 198.50 monthly |
| Wecom, Inc. (Gene Woff/Jack Trahan) | 600.00 yearly |
| PP Aircraft Refinishing | 400.00 monthly |

**SHADE HANGARS:**

| | |
|---|---|
| Gilbert Bones | 50.00 monthly |
| Bryan Carlson | 50.00 monthly |
| Michael Dom (x's 2 spaces) | 47.50 monthly |
| Bill House | 50.00 monthly |
| H. Wayne Learn | 50.00 monthly |
| James McGehee | 600.00 yearly |
| Alfred Myrick | 45.00 monthly |

| | |
|---|---|
| Simspon Aircraft Service | 2,000.00 yearly |
| Richard Swanson | 150.00 monthly |
| Tri-Star Security Services, Inc. | 250.00 monthly |
| Union Carbide | 5,500.00 yearly |
| United Parcel Service | 1,334.38 yearly |
| WF Cattle Company | 200.00 yearly |
| WRRR (T-Hangars) | 100.00 monthly |
| Yellow Freight System | 767.15 monthly |
| Arizona Department of Transportation | 5,147.10 ADOT #N106/#7 |
| Arizona Department of Transportation | 27,264.24 ADOT #N106/#6 |

# EXHIBIT E
## SUBLEASES

## BUILDING LEASES

AERO FLIGHT, INC.
5070 Flightline Dr.
Kingman, AZ 86401
Owners: Mat & Judy Ziomek
(602) 757-1335
15-Dec-88

AIRMARK AIRLINE SERVICES,
 INC.
9800 Flightline Drive
9900 Flightline Drive
Kingman, AZ 86401
(602) 757-4748
8045 Flightline Drive
Ramp - 13-Feb-91
Hangar B - 6-Feb-92

AIR'ZONA
7100 Flightline Drive
Kingman, AZ 86401
(602) 757-7744
Owners: Leonard Helco
 & Steve Edlefson

BUDGET-RENT-A-CAR
6000 Flightline Drive
Kingman, AZ 86401
(602) 757-3361
2-Jan-90

BLUMENTHAL, JIM
4650 Flightline
Kingman, AZ 86401
12-Mar-92

Maggie's Flightline Diner
6000 Flightline Drive
Kingman, AZ 86401
(602)
Lessee: Majorie Gibson
1-June-92

GENE'S FLYING SERVICE
4800 Flightline Drive
Kingman, AZ 86401
(602)
26-April-89

HURLEY TRUCKING
4905 Interstate Way West
Kingman, AZ 86401
(602) 757-9600
1-Oct-84

KINGMAN AERO SERVICES
5070 Flightline Dr.
Kingman, Az 86401
(602) 757-1335
Contact: Mat Ziomek
1-Mar-88

MESA Airlines
6000 Flightline Drive
Kingman, AZ 86401
(602) 757-5444
1-Jan-90

MORRISON KNUDSEN
4424 Santa Fe Drive
Kingman, AZ 86401
1-Jun-90

NIGH PACK SYSTEMS
9000 Government Way
PO Box 4147      86402
Kingman, Az 86401
(602)
1-Jul-88

SWANSON, RICHARD E.
9000 Government Way
Kingman, AZ 86401
(602)
Contact: Richard Swanson
28-Mar-89

Tri-Star Security Svs, Inc.
6000 Flightline Drive
Kingman, Az 86401
1-Jan-92

P.P. AIRCRAFT REFINISHING
4800 Flightline Drive
Kingman, AZ 86401
(602) 757-7000
Lessee: Phil Pingleton
1-Sept-87

WRRR Co.
7045 Flightline Drive
Kingman, AZ 86401
13-Aug-87

YELLOW FREIGHT SYS., INC.
4905 Interstate Way West
Kingman, AZ 86401
1-Oct-89

## LAND LEASES

FERRELGAS/Bulk Storage
PO Box 3478
Tulsa, OK 74101
1-Aug-89

FREIDAY CONSTRUCTION
dba/Kingman Redi-Mix
9985 Shipping
Kingman, Az 86401
(602) 757-2176
15-Oct-80

UPS
4745 Finance Way
Kingman, AZ 86401
1-800-352-0606
1-Jan-90

W.F. CATTLE COMPANY
PO Box 270
Kingman, AZ 86402
(602) 757-2614
Lessee: Grounds
1-Jan-61

"EXHIBIT F"
## BOOKS and RECORDS

1.   Accounts Receivables Ledger

2.   Accounts Payables Files

3.   Annual audits of Mohave County Airport Authority, Inc. from July, 1980 through June, 1992.

4.   Minutes of official meetings pertaining to the Kingman Airport and Industrial Park.

5.   All files, permanent and miscellaneous,  pertaining to the Kingman Airport and Industrial Park.

6.   All grant files and documents pertaining to the Kingman Airport and Industrial Park.

7.   Documents and correspondence of all nature pertaining to the Kingman Airport and Industrial Park.

8.   Maps, plans and specifications pertaining to the Kingman Airport and Industrial Park.

9.   All leases and/or subleases pertaining to the Kingman Airport and Industrial Park.

"EXHIBIT G"
GRANTS

Federal Aviation Administration Grants In Progress:

| | | |
|---|---|---:|
| 1. | A.I.P. 3-04-0021-04 | $138,411.00 |
| 2. | A.I.P. 3-04-0021-05 | 72,848.00 |
| 3. | A.I.P. 3-04-0021-06 | 500,000.00 |
| 4. | A.I.P. 3-04-0021-07 | 500,000.00 |

Federal Aviation Administration Grants Previously Administered:

| | | |
|---|---|---:|
| 1. | A.I.P. 3-04-0021-01 | 162,046.12 |
| 2. | A.I.P. 3-04-0021-02 | 451,921.55 |
| 3. | A.I.P. 3-04-0021-03 | 610,488.19 |
| 4. | ADAP 01 | 866,416.00 |
| 5. | ADAP 02 | 126,739.18 |
| 6. | ADAP 03 | 101,987.20 |

ADOT Aeronautics Division Grants In Progress:

| | | |
|---|---|---:|
| 1. | Fund Code N856 | $6,794.00 |
| 2. | Fund Code N006 | 289,894.00 |
| 3. | Fund Code N006 | 3,576.00 |
| 4. | Fund Code N106 | 299,700.00 |
| 5. | Fund Code N206 | 475,000.00 |
| 6. | Fund Code N155 | 100,000.00 |

ADOT Aeronautics Division Grants Previously Administered:

| | | |
|---|---|---:|
| 1. | Fund Code 90825 | $55,950.00 |
| 2. | Fund Code 90777 | 21,957.05 |
| 3. | Fund Code 90847 | 29,654.33 |

Economic Development Administration Grants Previously Administered:

| | | |
|---|---|---:|
| 1. | Grant No. 07-01-02352 | |
| 2. | Grant No. 07-06-03136 | 10,000.00 |
| 3. | Grant No. 07-01-02816 | 218,000.00 |

## *EXHIBIT H*
## INSURANCE

1.  Commercial Package Policy  No. GPPD23595217
    Willis Corroon Corporation of Arizona
    7310 N. 16th Street, Ste. 300
    Phoenix, AZ 85020
    (602) 870-7000

2.  CIGNA Airport Liability Policy No.  API089677
    Willis Corroon Aerospace
    70 South Lake Avenue, Ste. 1100
    Pasadena, CA 91101
    (818) 796-3888

3.  Principal Mutual Life Insurance Company
    Trustee UMEG Industrial Fund
    P.O. Box 9152
    Des Moines, IA 50306
    (702) 798-5999

"EXHIBIT I"
## CONTRACTS

1.   Coffman Associates                    Airport Planning, Master Plan Update
     11022 N. 28th Drive, Ste. 240
     Phoenix, AZ 85029
     (602) 993-6999

2.   Z & H Engineering, Inc.               Airport Design & Engineering
     717 West Dunlap Avenue
     Phoenix, AZ 85021
     (602) 997-7536

3.   Deutsch Associates                    Architectural Design
     2929 N. 44th St., Ste. 420
     Phoenix, AZ 85018
     (602) 840-2929

4.   Technologies Craftsmen, Inc.          Airport Lighting Construction
     P.O. Box 60818
     Phoenix, AZ 85082
     (602) 220-9092

## "EXHIBIT J"
## EMPLOYMENT CONTRACTS

1.   James A. Wilkinson, Executive Director

2.   Brenda S. Chastain, Director of Corporate Administration

3.   R.H. "Mack" McDaniels, Airport Manager

4.   James B. Harris, Communications Supervisor

5.   Janie Platt, Secretary

6.   James Dunham, Maintenance

7.   Rodney Campbell, Maintenance

## "EXHIBIT K"
### · Accounts Payables

American Economic
Development Council
9801 W. Higgins Rd., Ste
540
Rosemont, Il 60018-4726

Arizona Assocation for
Economic Development
4620 East Elwood Street,
Ste 13
Phoenix, AZ 85040

Air'Zona Aircraft Services
PO Box 3491
Kingman, AZ 86401

* American Assocation of
Airport Executives
4212 King Street
Alexandria, VA 22302

Arnel Fence Company
3870 Sunshine Drive
Kingman, AZ 86401

International Council of
Shopping Centers
665 Fifth Avenue
New York, NY 10022-
5370

* ADB-ALNACO, INC.
PO Box 360203 M.
Pittsburgh, PA 15251-
6203
Customer # M5885

Arizona Sign Service
2411 Louise Avenue
Kingman, AZ 86401

Arizona Machinery Co.
PO Box 63
Avondale, AZ 85323

American Office
Equipment Co. of NV
3225 McLeod
Las Vegas, NV 89121
Account #1323

Arthur's Sales & Service,
Inc.
523 E. Andy Devine
Kingman, AZ 86401

Arizona Industrial
Machinery Co.
PO Box 13346
Phoenix, AZ 85002
Customer # 310156

Atchison, Topeka & Santa
Fe Railway Company
PO Box 73043
Chicago, IL 60673
Tax ID # 36-2686122

BBC Industrial Supply Co.
3525 Essco Street
Kingman, AZ 86401
Customer # 1733

Big Sandy Natural
Resource Conservation
District
101 E. Beale St., Ste. C
Kingman, AZ 86401

* Trustee Industrial Fund
PO Box 9152
Des Moines, IA 50306
Act # N9601 03156

* Bruno, Weisberg &
Brooks, PC
730 E. Beale Street
Kingman, AZ 86401

* Connecting Point
Computer Center
1761 McCulloch Blvd.
Ste F
Lake Havasu City, AZ
86403

* Coffman Associates,
Inc.
11022 N. 28th Drive Ste
240
Phoenix, AZ 85029

Glenn M. Chapman, SRA
PO Box 3974
Kingman, AZ 86402

Citizens Utilities Arizona
Gas Division
Beale Street
Kingman, AZ 86401
Account # 18-29305-3
and # 18-29110-1

Citizens Utilities Company
Mohave Electric
PO Box 3099
Kingman, AZ 86402

Citizens Utilities Company
Telephone Division
PO Box 6159
Kingman, AZ 86402
Account #s 757-2134 and
765-7935

Citizens Communications
Services, Inc.
PO Box 6277
Kingman, AZ 86402-
6277
Account # 711-1989

Don's Office Products
216 North 5th Street
Kingman, AZ 86401

* Pertains to Services and/or Supplies rendered or received for the Kingman Airport and
Industrial Park.                    1

## "EXHIBIT K"
### Accounts Payables

* Dun's Marketing Services
PO Box 71710
Chicago,IL 60694-1710

ESSCO Wholesale Electric
555 N. Essco
Kingman, AZ 86401

Economy Heating & Cooling
4185 1/2 N. Bank St.
Kingman, AZ 86401

E.T. - Extra Touch Janitorial Service
PO Box 1007
Kingman, AZ 86401

Federal Express Corporation
PO Box 1140 Dept A
Memphis, TN 38101-1140
Account # 1024-9373-7

Gifts Just 4 U
Office Supply Division
PO Box 3382
Kingman, AZ 86401

Hughes Calihan Corporation
PO Box 10322
Phoenix, AZ 85064
Customer #303530

H & H Printers
4666 Stockton Hill Road
Kingman, AZ 86401

Heaven's Scent Florist
3111 Northern Avenue
Kingman, AZ 86401
Account # 461

* HINDS International, Inc.
5250 N.E. Elam Young Parkway
Hillsboro, Oregon 97124
Customer # 509835

Jim's House of Glass
2445 Airway
Kingman, AZ 86401

JOBS Available
PO Box 1040
Modesto, CA 95353

JI Case Credit Corporation
PO Box 371951
Pittsburgh, PA 15250-7951
Account # 97188-444109

Keith Equipment Co.
PO Box 14767
Phoenix, AZ 85063

Kingman, City of
310 North Fourth Street
Kingman, AZ 86401

Kingman Route 66 Rotary Club
PO Box 166
Kingman, AZ 86402

* Laughlin Nevada Times
PO Box 1209
Bullhead City, AZ 86442

Laughlin National Bank
Main Office
1775 Casino Drive
Laughlin, NV 89029
Customer # 900045
Note # 30429

Paul Myers Excavation
4419 N. Eagle Drive
Kingman, AZ 86401

* MANAIRCO
PO Box 111
Mansfield, OH 44901
Account # 12100100

County of Mohave
Finance Department
(Fuel Usage)
PO Box 7000
Kingman, AZ 86402

Mohave Daily Miner
3015 Stockton Hill Road
Kingman, AZ 86402
Account # 177

Mohave Disposal, Inc.
PO Box 3419
Kingman, AZ 86402
Customer #CSt0049 and #CTK0173

* Mohave Fire Protection Co.
PO Box 1868
Lake Havasu City, AZ 86405-1868

Mohave Oil Company
PO Box 3458
Kingman, AZ 86402
Account # 00108

Northwest Lock & Safe
4030 Stockton Hill LRoad
Kingman, AZ 86401

NAPA Auto Parts
2545 E. Andy Devine
Kingman, AZ 86401
Account #2134

* Pertains to Services and/or Supplies rendered or received for the Kingman Airport and Industrial Park.

2

## "EXHIBIT K"
### Accounts Payables

* National Sanitary Supply Co.
PO Box 30566
Los Angeles, CA 90030-0566
Account #48675

Norquip Rentals
18251 Napa Street
Northridge, CA 91325
Customer # 571248

Pitney Bowes Inc
PO Box 85390
Louisville, KY 40285-5390
Account #15252216880

Postage By Phone System
PO Box 7900071
St. Louis, MO 63179-0071
Account # 12877601

R & K Diesel Services, Inc.
3570 Gordon
Kingman, AZ 86401

Simon Sewer Maintenance
PO Box 616
Florence, AZ 85232

Shamrock Foods Company
Foods Division
2926 WEncanto Blvd
Phoenix, AZ 85009
Customer # 13139

* Sun Country Motors
3730 N. Stockton Hill Road
Kingman, AZ 86402
Account # 32613

* Martin Swanty CPD, INC.
2640 E. Andy Devine
Kingman, AZ 86401
Customer # 1220

Scott Publicaitons, Inc.
215 Coffee Pot Drive
Sedona, AZ 86336

* Tire World
3311 E. Andy Devine
Kingman, AZ 86401

Kingman True Value Home Center
3633 Stockton Hill Road
Kingman, AZ 86401
Account #2605

Orkin Pest Control
4550 Zeibart, #A
Las Vegas, NV 89103

Truelove Plumbing Company, Inc.
3522 North Swing
Kingman, AZ 86401

Tri-Star Security Services, Inc.
PO Box 927
Chino Valley, AZ 86323-0927
Account # MCA001

TEN-TEC,INC
1185 Dollary Parton Parkway
Sevierville, TN 37864·

Valley National Bank
PO Box 2963
Phoenix, AZ 85062
Account # 97749746

VINE Communications
2845 Airway Avenue
Kingman, AZ 86401
Account #7-0010

Valley National Bank
Mastercharge
PO Box 78168
Phoenix, AZ 85062-8168
Account # 5472 2170 0801 3128

*Voordeckers & Mosby
PO Box 4178
Kingman, AZ 86401

XXPRESS Photo
2116 Stockton Hill Road
Kingman, AZ 86401

* WT Environmental Consultants
3611 West Tompkins Ave
Las Vegas, NV 89103
Client # 55328

* Willis Corroon of AZ
7310 N. 16th Street
Suite 300
Phoenix, AZ 85020
Customer #035828

* Willis Corroon Corp.
Aerospace/Pasadena
70 S. Lake Ave., #1100
Pasadena, CA 91101
Customer #100023

* Pertains to Services and/or Supplies rendered or received for the Kingman Airport and Industrial Park.

3

# "EXHIBIT L"
# F.A.A. RELEASE OBLIGATION

## INSTRUMENT OF RELEASE

WHEREAS, the UNITED STATES OF AMERICA, acting by and through the General Services Administrator, under and pursuant to the powers and authority contained in the Federal Property and Administrative Service Act of 1949 (63 Stat. 377) and the Surplus Property Act of 1944 (58 Stat. 765), as amended, by instrument entitled "Instrument of Transfer" and dated November 28, 1949, did remise, release, and forever quitclaim to the County of Mohave, Arizona, its successors and assigns, all rights, title and interests of the United States in and to certain property known as the Kingman Municipal Airport subject to certain conditions, reservations, exceptions, and restrictions; and

WHEREAS, the County of Mohave, Arizona, has requested the Administrator of the Federal Aviation Agency to release a 264.8 acre parcel of land hereinafter described from all conditions, reservations, and restrictions contained in said "Instrument of Transfer" to permit the sale of said 264.8 acre parcel and has by appropriate resolution dated April 16, 1962, obligated itself to devote the proceeds from the sale of said property exclusively for the development, improvement, operation, or maintenance of the Kingman Municipal Airport; and

WHEREAS, the Administrator of the Federal Aviation Agency, under and pursuant to the powers and authority contained in Public Law 311 (63 Stat. 700) is authorized to grant a release from any of the terms, conditions, reservations, and restrictions contained in, and to convey, quitclaim, or release any right or interest reserved to the United States by any instrument of disposal under which surplus airport property was conveyed to a non-Federal public agency pursuant to Section 13 of the Surplus Property Act of 1944 (58 Stat. 765); and

WHEREAS, the Administrator of the Federal Aviation Agency has determined that said 264.8 acre parcel no longer serves the purpose for which it was made subject to such terms, conditions, reservations, and restrictions;

NOW, THEREFORE, in consideration of the benefits to accrue to the United States and to civil aviation, the United States of America,

of disposal under which surplus airport property was conveyed to a non-Federal public agency pursuant to Section 13 of the Surplus Property Act of 1944 (58 Stat. 765); and

WHEREAS, the Administrator of the Federal Aviation Agency has determined that said 264.8 acre parcel no longer serves the purpose for which it was made subject to such terms, conditions, reservations, and restrictions.

NOW, THEREFORE, in consideration of the benefits to accrue to the United States and to civil aviation, the UNITED STATES OF AMERICA, acting by and through the Administrator of the Federal Aviation Agency under and pursuant to the powers and authority contained in Public Law 311 (63 Stat. 700) and applicable rules, regulations, and orders, hereby releases the following

Exhibit A

11

described real property from the conditions, reservations, and restrictions

of said "Instrument of Transfer" dated November 28, 1949, between the United

States and the County of Mohave, Arizona:

> Beginning at a point which lies 38°46' W, a distance of
> 1835.0 feet from the northeast corner of Section 26,
> Township 22 North, Range 16 West, G.&S.R.M., Mohave County,
> Arizona; thence N 45°00' W, a distance of 1100.0 feet; thence
> S 45°00' W, a distance of 1450.0 feet; thence N 45°00' W, a
> distance of 2685.3 feet to the point of intersection with the
> southeasterly right-of-way boundary of the A.T.&S.F. Railroad;
> thence N 38°18' E along said right-of-way boundary, a distance
> of 3323.1 feet; thence S 45°00' E, a distance of 4173.3 feet;
> thence S 45°00' W, a distance of 1850.0 feet to the point of
> beginning. A Parcel containing 264.8 Acres, more or less.

This release is granted subject to the following conditions:

That complete description of said property will be publicly advertised

and sold to the highest bidder; however, if the highest bid received is not

considered to be the fair market value of said property, it may be withdrawn

from sale and disposed of by negotiated sale.

That the instrument used to convey the hereinabove described property

shall expressly include the following reservations by the Grantor:

1. There is hereby reserved to the Grantor, its successors and

   assigns, for the use and benefit of the public, a right of

   flight for the passage of aircraft in the airspace above the

   surface of the premises herein conveyed, together with the

   right to cause in said airspace such noise as may be inherent

   in the operation of aircraft, now known or hereafter used

   for navigation of or flight in the air, using said airspace

   or landing at, taking off from or operating on the Kingman

   Municipal Airport.

2. The Grantee by accepting this conveyance expressly agrees

   for itself, successors, and assigns that it will not erect

   nor permit the erection of any structure or object nor

   ... if the growth of any tree on the land conveyed hereunder

assigns for the use and benefit of the public, a right of

flight for the passage of aircraft in the airspace above the

surface of the premises herein conveyed, together with the

right to cause in said airspace such noise as may be inherent

in the operation of aircraft, now known or hereafter used

for navigation of or flight in the air, using said airspace

or landing at, taking off from or operating on the Kingman

Municipal Airport.

2.   The Grantee by accepting this conveyance expressly agrees

for itself, successors, and assigns that it will not erect

nor permit the erection of any structure or object nor

permit the growth of any tree on the land conveyed hereunder

above a mean sea level elevation of 3483 feet.  In the event

the aforesaid covenant is breached the Grantor reserves the

right to enter on the land conveyed hereunder and to remove

the offending structure or object and to cut the offending

tree, all of which shall be at the expense of the Grantee.

3.   The Grantee by accepting this conveyance expressly agrees

for itself, successors, and assigns that it will not make use

-2-

of the said property in any manner which might interfere with

the landing and taking off of aircraft from said Kingman

Municipal Airport or otherwise constitute an airport hazard.

In the event the aforesaid covenant is breached the Grantor

reserves the right to enter on the land conveyed hereunder

and cause the abatement of such interference at the expense

of the Grantee.

IN WITNESS WHEREOF, the UNITED STATES OF AMERICA has caused this

Instrument to be executed as of the 1st day of June , 1962.

UNITED STATES OF AMERICA
The Administrator of the Federal Aviation Agency

By _____
Chief, Airport Division, Western Region

STATE OF CALIFORNIA )
                    ) ss
COUNTY OF LOS ANGELES)

On this 1st day of _____, 1962, before me

_____, a Notary Public in and for the County of

Los Angeles, State of California, personally appeared _____

known to me to be the Chief, Airports Division, Western Region, Federal Aviation

Agency, and known to me to be the person whose name is subscribed to the within

Instrument and acknowledged that he executed the same on behalf of the

Administrator of the Federal Aviation Agency and the United States of America.

WITNESS my hand and official seal.

_____
Notary Public in and for the County
of Los Angeles, State of California

STATE OF CALIFORNIA )
)ss
COUNTY OF LOS ANGELES)

On this _1st_ day of _____, 1962, before me

_____, a Notary Public in and for the County of

Los Angeles, State of California, personally appeared _____

known to me to be the Chief, Airports Division, Western Region, Federal Aviation

Agency, and known to me to be the person whose name is subscribed to the within

Instrument and acknowledged that he executed the same on behalf of the

Administrator of the Federal Aviation Agency and the United States of America.

WITNESS my hand and official seal.

_____
Notary Public in and for the County
of Los Angeles, State of California

My Commission Expires:

_March 5, 1966_

Filed and Recorded at Request of _____ Co.
AUG 14 1962  — 7:45 Min. Past 4:00 o'clock P. M.
in book 127 of DEEDS _____ Page _10-15_
Records of Mohave County, Arizona.

By_____                    _____
     Deputy Recorder                    Recorder          CEMCO

                                        114703

-3-

# "EXHIBIT L"
# F.A.A. RELEASE OBLIGATION

INSTRUMENT OF RELEASE

WHEREAS, the UNITED STATES OF AMERICA, acting by and through the General Services Administrator, under and pursuant to the powers and authority contained in the provisions of the Federal Property and Administrative Services Act of 1949 (63 Stat. 377) and the Surplus Property Act of 1944 (58 Stat. 765), as amended, by instrument entitled "Instrument of Transfer" and dated November 28, 1949, did remise, release, and forever quitclaim to the County of Mohave, Arizona, its successors and assigns, all rights, title and interests of the United States in and to certain property known as the Mohave County Airport, Kingman, Arizona (formerly known as Kingman Army Airbase), subject to certain conditions, reservations, exceptions, and restrictions; and

WHEREAS, the County of Mohave, Arizona, has requested the Administrator of the Federal Aviation Administration to release a 23.054 acre parcel and a 19.51 acre parcel of land hereinafter described as Tucker-Cosco Parcel and Bertolini Engineering Company Parcel respectively, from all conditions, reservations, and restrictions contained in said "Instrument of Transfer" to permit the sale of said parcels and has by appropriate resolution dated March 19, 1979, obligated itself to devote the proceeds from the sale of said property exclusively for the development, improvement, operation, or maintenance of the Mohave County Airport; and

WHEREAS, the Administrator of the Federal Aviation Administration, under and pursuant to the powers and authority contained in Public Law 311 (63 Stat. 700) is authorized to grant a release from any of the terms, conditions, reservations, and restrictions contained in, and to convey, quitclaim, or release any right or interest reserved to the United States by any instrument of disposal under which surplus airport property was conveyed to a non-Federal public agency pursuant to Section 13 of the Surplus Property Act of 1944 (58 Stat. 765); and

WHEREAS, the Administrator of the Federal Aviation Administration has determined that the release of said parcels on Mohave County Airport will not prevent accomplishment of the purposes for which such parcel was conveyed by the United States, and is necessary to protect and advance the interests of the United States in civil aviation, and that the conveyance of said parcels

BOOK 541 PAGE 841

of land will not materially or adversely affect the use, operation, or
maintenance of the Mohave County Airport;

NOW, THEREFORE, in consideration of the benefits to accrue to the
United States and to civil aviation, the UNITED STATES OF AMERICA, acting by
and through the Administrator of the Federal Aviation Administration under and
pursuant to the powers and authority contained in Public Law 311 (63 Stat. 700)
and applicable rules, regulations, and orders, hereby releases the following
described real property from the conditions, reservations, and restrictions
of said "Instrument of Transfer" dated November 28, 1949, between the United
States and the County of Mohave, Arizona:

### Tucker-Cosco Parcel

A portion of the West one-half of Section 26, T22N, R16W, G & SRB & M, Mohave
County, Arizona, being more particularly described as follows: *

> Beginning at the West one quarter corner of said Section 26 (an
> original U.S. GLO 1" iron pipe w/BC) having Arizona, West Zone,
> transverse Mercator Grid Coordinates of X=438011.55, Y=1550423.87
> (basis of bearings herein being Grid North in said West Zone and
> distances being ground-ground to grid factor = 0.999775);
>
> thence S. 33°42'17" E. a distance of 618.35' to the TRUE POINT OF
> BEGINNING which is the Westerly corner of the parcel being described
> and is marked by a 5/8" rebar with alum. cap;
>
> thence N. 45°07'35" E. along the Southeast R/W line of Interstate
> Way (8th St., a 70' wide street) a distance of 1545.00' to a 5/8"
> rebar with alum. cap;
>
> thence S. 44°52'07" E. a distance of 650.00' to the Northwest R/W
> line of the railroad spur and is marked by a 5/8" rebar with alum.
> cap;
>
> thence S. 45°07'35" W. along said railroad spur R/W a distance of
> 1545.00' to a 5/8" rebar with alum. cap;
>
> thence N. 44°52'07" W. a distance of 650.00' to the TRUE POINT OF
> BEGINNING.  A parcel containing 23.054 acres, more or less.

### Bertolini Engineering Company Parcel

A portion of the Southwest one quarter of Section 26, T22N, R16W, G & SRB & M,
Mohave County, Arizona, being more particularly described as follows:

> Beginning at the West one quarter corner of said Section 26 (an
> original U.S. GLO 1" iron pipe, w/BC) having Arizona West Zone,
> Transverse Mercator Grid Coordinates of X=438011.55, Y=1550423.87
> (basis of bearings herein being Grid North in said West Zone and
> distances being ground-ground to grid factor = 0.999775);
>
> thence S. 49°03'13" E. a distance of 1305.11' to the TRUE POINT
> OF BEGINNING which is the Westerly corner of the parcel being
> described and which is also a point on the Southeast R/W line
> of the railroad spur, and is marked by a 5/8" rebar with alum.
> cap;

thence N. 45°07'35" E. along said R/W line a distance of 1140.88'
to a 5/8" rebar with alum. cap;

thence S. 44°52'07" E. a distance of 745.00' to a 5/8" rebar with
alum. cap;

thence S. 45°07'35" W. a distance of 1140.88' to a 5/8" rebar with
alum. cap;

thence N. 44°52'07" W. a distance of 745.00' to the TRUE POINT OF
BEGINNING.  A parcel containing 19.51 acres, more or less.

This release is granted on and subject to the condition that the County

of Mohave as Grantor shall expressly include in the instrument used to convey

the hereinabove described property the following reservations:

1.  The Grantor reserves unto itself, its successors and assigns, for the use

    and benefit of the public a right of flight for the passage of aircraft

    in the airspace above the surface of the real property conveyed hereunder

    together with the right to cause in said airspace such noise as may be

    inherent in the operation of aircraft, now known or hereafter used, for

    navigation of or flight in the said airspace, and for use of said airspace

    for landing on, taking off from or operating on Mohave County Airport.

2.  The Grantee by accepting this conveyance expressly agrees for itself, its

    successors and assigns that it will not erect nor permit the erection of

    any structure, building, object of natural growth, or other obstruction on

    the real property conveyed hereunder above a height of three thousand, five

    hundred and twenty two (3,522) feet above mean sea level (MSL) elevation.

    In the event the aforesaid covenant is breached, the Grantor reserved the

    right to enter on the real property conveyed hereunder and to remove the

    offending structure or object and to cut the offending natural growth, all

    of which shall be at the expense of the Grantee.

3.  The Grantee, by accepting this conveyance, expressly agrees for itself,

    its successors and assigns, that it will not make use of the real property

    conveyed hereunder in any manner which might interfere with air navigation

    and communication, and the landing and taking off of aircraft from

    Mohave County Airport, or otherwise constitute an airport hazard.  In the

    event the aforesaid covenant is breached, the Grantor reserves the right

    to enter on the land conveyed hereunder and cause the abatement of such

    interference at the expense of the Grantee.

IN WITNESS WHEREOF, the UNITED STATES OF AMERICA has caused this Instrument to be executed as of the ___11th___ day of ___April___, 1979.

UNITED STATES OF AMERICA
The Administrator of the Federal Aviation Administration

By _____
Acting Chief, Airports Division

STATE OF CALIFORNIA  )
                     ) as
COUNTY OF LOS ANGELES)

On this ___11th___ day of ___April___, 1979, before me, the undersigned, a Notary Public in and for said State, personally appeared

                                                      Acting
_____ known to me to be the Chief, Airports Division, Western Region, Federal Aviation Administration, and known to me to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same on behalf of the Administrator of the Federal Aviation Administration and the UNITED STATES OF AMERICA.

WITNESS my hand and official seal.

_____
Notary Public in and for the County
of Los Angeles, State of California

My Commission Expires:
Sep 13, 1982

OFFICIAL SEAL
THOMAS W. BINCZAK
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My comm. expires SEP 13, 1982

'79-15067

Ret. Gail Keeler

FEE # _____

Recorded at the Request of _____
___Gail Keeler, Clerk___
on ___MAY 11 '79 -3 30 PM___
in Book ___541___ of OFFICIAL RECORDS,
Page(s) ___841-844___
Records of Mohave County, Arizona.
Joan McCall _____ Joan McCall
Mohave County Recorder

By _____
                         Deputy

no Chg

-4-

BOOK 541 PAGE 844

CERTIFICATION OF COPY

STATE OF ARIZONA     )  SS.
COUNTY OF MOHAVE  )

   I, JOAN McCALL, the duly elected, qualified and acting
Recorder of Mohave County, in the State of Arizona, do
hereby certify that the attached is a true, full and correct
copy of the original instrument now on record in this office.
IN WITNESS WHEREOF, I have hereunto set my hand an I
affixed the seal of my office, in Kingman, Arizona this

_11_ day of _May_____ A.D. 19 _79_

              JOAN McCALL, County Recorder.

        By _Joan McCall_____

**DEPARTMENT OF TRANSPORTATION**
FEDERAL AVIATION ADMINISTRATION

WESTERN REGION
P. O. BOX 92007, WORLDWAY POSTAL CENTER
LOS ANGELES, CALIFORNIA 90009



APR 11 1979        *LETTER OF CONSENT*

Mr. Walter C. Anderson
County Manager
County of Mohave
P.O. Box 390
Kingman, Arizona 86401

                    Re:  Mohave County Airport, Kingman, AZ;
                         Request for Release

Dear Mr. Anderson:

With reference to your undated letter which we received on
March 27, 1979, concerning a request for release of two parcels,
Tucker-Cosco Parcel (23.054 acres) and Bertolini Engineering Company
Parcel (19.51 acres), located at Mohave County Airport from the
surplus property disposed restrictions.

It will also be necessary to release said parcels from the terms
and conditions of several Federal Aid to Airport Program (FAAP)
and Airport Development Aid Program (ADAP) Grant Agreements.

This letter, therefore, constitutes release of the two parcels
(approximately 42.564 acres) described in your above referenced
request from the terms and conditions of the following Federal
Grant Agreements:                                    79-15068

FAAP Grant Agreement Numbers

Project Nos. 9-02-024-0701 and 9-02-024-5902

ADAP Grant Agreement Number

Project No. 8-04-0021-01

Sincerely,

HERMAN C. BLISS
Chief, Airports Division

Ret. Gael Kesler

BOOK 541 PAGE 845

STATE OF ARIZONA } ss
County of Mohave }
   I hereby certify that the with-
in instrument was filed and re-
corded at request of _____
Gael Kesler, Clerk
on  NOV 11 '79 - 3 30 PM
in book _541_ of official
records, page(s) _845_
   Witness my hand and official
seal the day and year aforesaid.
JOAN McCALL
        Mohave County Recorder
By _____
        Deputy Recorder
                michy

CERTIFICATION OF COPY
STATE OF ARIZONA    ) SS.
COUNTY OF MOHAVE  )
    I, JOAN McCALL, the duly elected, qualified and acting
Recorder of Mohave County, in the State of Arizona, do
hereby certify that the attached is a true, full and correct
copy of the original instrument now on record in this office.
IN WITNESS WHEREOF, I have hereunto set my hand and
affixed the seal of my office, in Kingman, Arizona this

_11_ day of _May_ _____ A.D. 19 _79_
                    JOAN McCALL, County Recorder.

(SEAL)          By _____
                         Deputy

# ˉEXHIBIT Lˉ
## F.A.A. RELEASE OBLIGATION

### INSTRUMENT OF RELEASE

WHEREAS, the UNITED STATES OF AMERICA, acting by and through the General Services Administrator, under and pursuant to the powers and authority contained in the provisions of the Federal Property and Administrative Services Act of 1949 (63 Stat. 377) and the Surplus Property Act of 1944 (58 Stat. 765), as amended, by instrument entitled "Instrument of Transfer" and dated November 28, 1949, did remise, release, and forever quitclaim to the County of Mohave, Arizona, its successors and assigns, all rights, title and interests of the United States in and to certain property known as the Mohave County Airport, Kingman, Arizona (formerly known as Kingman Army Airbase), subject to certain conditions, reservations, exceptions, and restrictions; and

WHEREAS, the County of Mohave, Arizona, has requested the Administrator of the Federal Aviation Administration to release 636.8 acres of land, more or less, hereinafter described, from all conditions, reservations, and restrictions contained in said "Instrument of Transfer" to permit the sale of said parcels and has by appropriate Resolution No. 1391, dated June 18, 1979, obligated itself to devote the proceeds from the sale of any portion of said property exclusively for the development, improvement, operation, or maintenance of the Mohave County Airport; and

WHEREAS, the Administrator of the Federal Aviation Administration, under and pursuant to the powers and authority contained in Public Law 81-311 (63 Stat. 700) is authorized to grant a release from any of the terms, conditions, reservations, and restrictions contained in, and to convey, quitclaim, or release any right or interest reserved to the United States by any instrument of disposal under which surplus airport property was

BOOK 669 PAGE 406

conveyed to a non-Federal public agency pursuant to Section 13 of the Surplus Property Act of 1944 (58 Stat. 765); and

WHEREAS, the Administrator of the Federal Aviation Administration has determined that the release of said lands at Mohave County Airport will not prevent accomplishment of the purposes for which the land was conveyed by the United States, and is necessary to protect and advance the interests of the United States in civil aviation, and that the conveyance of said lands will not materially or adversely affect the use, operation, or maintenance of the Mohave County Airport;

NOW, THEREFORE, in consideration of the benefits to accrue to the United States and to civil aviation, the UNITED STATES OF AMERICA, acting by and through the Administrator of the Federal Aviation Administration under and pursuant to the powers and authority contained in Public Law 81-311 (63 Stat. 700) and applicable rules, regulations, and orders, hereby releases the real property described in Exhibit "A" attached hereto and made a part hereof, from the conditions, reservations, and restrictions of said "Instrument of Transfer" dated November 28, 1949, between the United States and the County of Mohave, Arizona

This release is granted on and subject to the condition that the County of Mohave as Grantor shall expressly include in the instrument used to convey any portion of the herein described property the following reservations:

1. The Grantor reserves unto itself, its successors and assigns, for the use and benefit of the public a right of flight for the passage of aircraft in the airspace above the surface of the real property conveyed hereunder together with the right to cause in said airspace such noise as may be

inherent in the operation of aircraft, now known or hereafter used, for
navigation of or flight in the said airspace, and for use of said airspace
for landing on, taking off from or operating on Mohave County Airport.

2. The Grantee by accepting this conveyance expressly agrees for itself, its
   successors and assigns that it will not erect nor permit the erection of
   any structure, building, object of natural growth, or other obstruction
   on the real property conveyed hereunder above a height of three thousand,
   five hundred and twenty two (3,522) feet above mean sea level (MSL)
   elevation.  In the event the aforesaid covenant is breached, the Grantor
   reserves the right to enter on the real property conveyed hereunder and
   to remove the offending structure or object and to cut the offending
   natural growth, all of which shall be at the expense of the Grantee.

3. The Grantee, by accepting this conveyance, expressly agrees for itself,
   its successors and assigns, that it will not make use of the real property
   conveyed hereunder in any manner which might interfere with air navigation
   and communication, and the landing and taking off of aircraft from Mohave
   County Airport, or otherwise constitute an airport hazard.  In the event
   the aforesaid covenant is breached, the Grantor reserves the right to
   enter on the land conveyed hereunder and cause the abatement of such
   interference at the expense of the Grantee.

IN WITNESS WHEREOF, the UNITED STATES OF AMERICA has caused this Instrument to be executed as of the _____3 RD_____ day of _NOVEMBER_, 1980.


UNITED STATES OF AMERICA
The Administrator of the Federal Aviation Administration


By _Herman C. Bliss_
Chief, Airports Division


STATE OF CALIFORNIA )
                     ) as
COUNTY OF LOS ANGELES)


On this _3_ day of _November_, 1980, before me, the undersigned, a Notary Public in and for said State, personally appeared _Herman C. Bliss_ known to me to be the Chief, Airports Division, Western Region, Federal Aviation Administration, and known to me to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same on behalf of the Administrator of the Federal Aviation Administration and the UNITED STATES OF AMERICA.

WITNESS my hand and official seal.

OFFICIAL SEAL
SHIRLEY JOYCE JAMES
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My comm. expires FEB 7, 1931

_Shirley Joyce James_
Notary Public in and for the County of Los Angeles, State of California

My Commission Expires:
_Feb 7, 1984_

• Page 4 of 4 pages

BOOK 669 PAGE 409

Legal Description   *EXHIBIT "H"*

A portion of Sections 14, 23, 25, 26, and 27 of T22N, R16W, G. & S.R.B. & M., situated in Mohave County, Arizona, and being more particularly described as follows:

Beginning at the Southwest Corner of Section 26, T22N, R16W, G. & S.R.B. & M., a U.S.G.L.O. 2 1/2" ODIP W/Brass Cap, having Arizona West Zone Transverse Mercator State Plane Coordinates of X = 438005.02 and Y = 1547784.46, thence N00°08'30"E (Basis of Bearings: Grid North, said West Zone) and along the West line of Section 26, 500.00 feet to the True Point of Beginning; thence S89°41'39"E and parallel to the South line of said Section 26, 655.08 feet to a point in the Southwesterly line of the "Worm Farm Parcel"; thence S44°52'45"E, along the Southwesterly line of said "Worm Farm Parcel" 79.00 feet to a 5/8" rebar being the Southerly most corner of said "Worm Farm Parcel"; thence continuing S44°52'45"E, 60.00 feet to a point; thence N45°07'15"E and parallel to the Southeasterly line of said "Worm Farm Parcel", 406.15 feet to the beginning of a Tangent Curve Concave to the South having a radius of 30.00 feet and thence continuing along said Circular Curve through a Central Angle of 68°09'35" to the right, an arc length of 46.16 feet to the point of reverse curve; thence Southeasterly along a Tangent Curve Concave to the Northeast having a radius of 274.81 feet through a central angle of 43°18'01" to the left, an arc length of 207.68 feet to the point of Tangency; thence N89°58'49"E, 1278.54 feet to the beginning of a Tangent Curve Concave to the Northwest having a radius of 250.00 feet; thence continuing along said circular curve through a Central Angle of 44°50'21" to the left, an arc length of 195.65 feet to the point of tangency; thence N45°08'28"E, 1837.88 feet to a point; thence N44°52'29"W, 113.99 feet to a cusp point; thence Easterly along a Tangent Curve concave to the North having a radius of 30.00 feet through a Central Angle of 89°59'03" to the left, an arc length of 47.12 feet to the point of tangency; thence N45°08'28"E, 1760.02 feet to the beginning of a Tangent Curve Concave to the Northwest having a Radius of 166.00 feet and thence continuing along said Circular Curve through a Central Angle of 44°59'31" to the left, an arc length of 130.35 feet to the point of Tangency in the East line of the Northeast Quarter of Section 26; thence N00°08'57"E, along said East line 1834.26 feet to the Northeast Corner of said Section 26 being a U.S.G.L.O. 2 1/2" ODIP W/Brass Cap; thence N00°10'43"E, along the East line of the Southwest Quarter of Section 23, 2644.44 feet to the East One-Quarter Corner of said Section 23 being a U.S.G.L.O. 1" ODIP W/Brass Cap; thence N00°10'31"E along the East line of the Northeast Quarter of said Section 23, 2643.87 feet to the Northeast Corner of said Section 23 being a U.S.G.L.O. 2 1/2" ODIP W/Brass Cap; thence N00°02'54"E along the East Line of the Southeast Quarter of Section 14, 1081.05 feet to a point being the intersection of the aforementioned East line and the Southeasterly Right-of-Way line of the A.T. & S.F. Railroad; thence S36°25'17"W along the aforementioned Southeasterly Right-of-Way line, 13233.00 feet to a point; thence S33°16'48"E, 501.45 feet to a point; thence S89°57'20"E and parallel to the South line of Section 27, 2419.59 feet to the Point of Beginning.

-1-

EXHIBIT for the following five parcels of land:

Parcel 1 - General Cable Corporation as recorded in Book 245 of Deeds, pages 209-211, and described as follows:

A parcel containing 56.1 acres, more or less, being a part of Section 26 and a part of Section 27, T22N, R16W, G. & S.R.B. & M., Mohave County, Arizona, said Parcel being more particularly described as follows:

Beginning at a point which lies S73°19'19"W, a distance of 3753.47 feet from the Northeast Corner of said Section 26; thence N45°00'W, a distance of 930.00 feet; thence Northwesterly along the arc of a curve, concave to the Southwest and having a radius of 175.00 feet and a central angle of 90°00', an arc distance of 274.89 feet; thence S45°00'W, a distance of 844.16 feet; thence Southwesterly along the arc of a curve, concave to the Southwest and having a radius of 849.95 feet and a central angle of 6°44', an arc distance of 99.88 feet; thence S38°16'W, a distance of 1060.84 feet; thence Southwesterly along the arc of a curve, having a radius of 20.00 feet and a central angle of 83°16', an arc distance of 29.07 feet; thence S45°00'E a distance of 397.82 feet; thence N45°00'E, a distance of 41.00 feet; thence S45°00'E, a distance of 100.25 feet; thence S45°00'W, a distance of 41.00 feet; thence S45°00'E, a distance of 486.82 feet; thence Southeasterly along the arc of a curve, concave to the Northeast and having a radius of 20.00 feet and a central angle of 90°00', an arc distance of 31.42 feet; thence N45°00'E, a distance of 2120 feet; thence northeasterly along the arc of a curve concave to the Northwest and having a radius of 50.00 feet and a central angle of 90°00', an arc distance of 78.54 feet to the Point of Beginning.

Parcel 2 - Rutherford-Welsh, as recorded in Book 137 of Deeds, pages 506-513, and described as follows:

Beginning at a point which lies S38°46'W, a distance of 1835.0 feet from the Northeast corner of Section 26, T22N, R16W, G. & S.R.B. & M., Mohave County, Arizona; thence N45°00'W, a distance of 1100.0 feet; thence S45°00'W, a distance of 1450.00 feet; thence N45°00'W, a distance of 2685.3 feet to the Point of Intersection with the Southeasterly Right-of-Way Boundary of the A.T. & S.F. Railroad; thence N38°18'E, along said Right-of-Way Boundary, a distance of 3323.1 feet; thence S45°00'E, a distance of 4173.3 feet; thence S45°00'W, a distance of 1850.0 feet to the Point of Beginning. A parcel containing 264.8 acres, more or less.

Parcel 3 - Tucker-Cosco, as recorded in Book 545 of Official Records, pages 684-685, and described as follows:

A portion of the West one-half of Section 26, T22N, R16W, G. & S.R.B. & M., Mohave County, Arizona, being more particularly described as follows:

Beginning at the West One-Quarter Corner of said Section 26, (an Original U.S.G.L.O. 1" I. Pipe W/B.C.) having Arizona West Zone Transverse Mercator Grid Coordinates of X=438011.55, Y=1550423.87 (Basis of bearings herein being grid North in said West Zone and distances being ground-ground to grid factor=0.999775);

Thence S33°42'17"E a distance of 618.35 feet to the True Point of Beginning which is the Westerly Corner of the parcel being described and is marked by a 5/8" Rebar W/Alum. Cap;

BOOK 663 PAGE 411    EXHIBIT "A"

11/13/79

Thence N45°07'35"E along the Southeast Right-of-Way
line of the Interstate Way (8th Street, a 70' wide
street) a distance of 1545.00 feet to a 5/8" Rebar
W/Alum. Cap;

Thence S44°52'07"E a distance of 650.00 feet to the
Northwest R/W line of the Railroad Spur and is marked
by a 5/8" Rebar W/Alum. Cap;

Thence S45°07'35"W along said Railroad Spur Right-of-Way
a distance of 1545.00 feet to a 5/8" Rebar W/Alum. Cap;

Thence N44°52'07"W a distance of 650.00 feet to the
True Point of Beginning.

The above described parcel contains an area of 23.054
acres.

Parcel 4 – Bertolini Engineering Company

A portion of the Southwest One-Quarter of Section 26,
T22N, R16W, G. & S.R.B. & M., Mohave County, Arizona
being more particularly described as follows:

Beginning at the West One-Quarter Corner of said
Section 26, (an Original U.S.G.L.O. 1" Iron Pipe W/B.C.)
having Arizona West Zone, Transverse Mercator Grid
Coordinates of X=438011.55, Y-1550423.87 (basis of
bearings herein being grid North in said West Zone and
distance being Ground-Ground to Grid Factor = 0.999775);

Thence S49°03'13"E a distance of 1305.11 feet to the
true point of beginning which is the Westerly Corner of
the parcel being described and which is also a point on
the Southeast Right-of-Way line of the Railroad Spur,
and is marked by a 5/8" Rebar W/Alum. Cap;

Thence N45°07'35"E along said Right-of-Way line a dis-
tance of 1140.88 feet to a 5/8" Rebar W/Alum. Cap.

Thence S44°52'07"E a distance of 745.00 feet to a 5/8"
rebar W/Alum. Cap;

Thence S45°07'35"W a distance of 1140.88 feet to a
5/8" rebar W/Alum. Cap.

Thence N44°52'07"W a distance of 745.00 feet to the
True Point of Beginning.

The above described parcel contains an area of 19.51 acres.

Parcel 5 – Access Roads

See the map attached hereto and by reference is made a
part hereof.

This parcel as described above, less the 5 Exceptions contains an
area of 636.8 acres, more or less.

All lineal distances called herein when reduced by the combined
grid factor of 0.999775 would be Sea Level grid distances said
Arizona West Zone State Plane Coordinate System.



PARCEL PLAT
A PORTION OF SECTIONS 23, 26 & 27, T22N, R16W, G&SRB&M
MOHAVE COUNTY, ARIZONA, AIRPORT ACCESS ROADS

˝EXHIBIT L˝
## F.A.A. RELEASE OBLIGATION

AGREEMENT BETWEEN UNITED STATES

OF AMERICA AND CITY OF KINGMAN

THIS AGREEMENT, made this 19th day of December,
1988, by the UNITED STATES OF AMERICA, acting by and
through the FEDERAL AVIATION ADMINISTRATION, as
represented by the Chief, Airports Division, Western
Region (or other appropriate official), hereinafter
referred to as "FAA", and the CITY OF KINGMAN, a
municipal corporation functioning under the laws of the
State of Arizona, hereinafter referred to as "CITY".

W I T N E S S E T H:

WHEREAS, Resolution No. 1271 was adopted by City
Council of the City of Kingman on the 5th day of
December, 1988, a copy of which is attached hereto and
is hereby incorporated herein and made a part hereof by
reference; and

WHEREAS, Resolution No. 1271 obligates the CITY to
expend an amount equal to the proceeds that could or
will be realized from the sale or disposition of any
portion of land at the Kingman Airport for specific
items of improvement at the airport or other specified
public airports within Five (5) Years and further

authorizes the Mayor of the City of Kingman to enter into this Agreement in behalf of the City of Kingman.

NOW, THEREFORE, in consideration of the covenants and agreements contained herein, FAA and CITY mutually agree as follows:

## ARTICLE I

Pursuant to the authority contained in Public Law 81-311 and Part 155 of the Federal Aviation Regulations, FAA shall deliver to CITY an instrument of release releasing a portion of that real property covered by the "Instrument of Transfer" dated the 28th day of November, 1949, in effect at the Kingman Airport, formerly the Mohave County Airport, from all reservations and restrictions found in said Instrument of Transfer. Said portion of real property is more fully described by Exhibit "A" attached hereto and by reference made a part hereof.

## ARTICLE II

The CITY shall expend an amount equal to the net proceeds derived or which could be derived from the sale of any portion of the released real property and otherwise perform in accordance with all the

-2-

requirements of Resolution No. 1271, dated December 5, 1988, as attached hereto and by reference incorporated herein and made a part hereof.

## ARTICLE III

The CITY shall submit to FAA a current appraisal for each portion of the released real property prior to the sale of each portion for concurrence by FAA in the appraised value of that portion, and after each sale the CITY shall advise FAA of the amount for which that portion sold.

## ARTICLE IV

Incident to performing under Article II above, the CITY agrees that for purposes of this Agreement, the terms and conditions of Resolution No. 1271, dated December 5, 1988, as attached hereto are controlling and shall remain in full force and effect throughout the life of this Agreement.

## ARTICLE V

This Agreement shall remain in effect until FAA determines that the CITY has complied with all the terms thereof and FAA so informs the CITY.

-3-

## ARTICLE VI

The parties hereto agree that this Agreement is personal and does not run with the land.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals the day and year first above written.

UNITED STATES OF AMERICA     CITY OF KINGMAN
The Administrator of the
Federal Aviation Adminis-
tration

By_____     By_____
   Chief, Airports Div.             Carol Anderson, Mayor
   Western Region

-4-

RESOLUTION NO. 1271

A RESOLUTION OF THE CITY COUNCIL,
CITY OF KINGMAN, OBLIGATING THE CITY OF KINGMAN
TO EXPEND THE PROCEEDS OF THE SALE OF EXCESS
LAND AT THE AIRPORT UPON THE KINGMAN AIRPORT
WITHIN A FIVE-YEAR PERIOD

WHEREAS, the City of Kingman, a municipal corporation functioning under the laws of the State of Arizona, will acquire the Kingman Airport, formerly known as the Mohave County Airport, from the County of Mohave, a political subdivision of the State of Arizona, all pursuant to that Agreement between the County of Mohave and the City of Kingman dated the 19th day of December, 1988, subject only to the approval of the Federal Aviation Administration; and

WHEREAS, the Federal Aviation Administration has advised the City of Kingman that the Administrator of the Federal Aviation Administration has adopted a policy requirement that, as a condition to the release of any excess land for sale from the terms, conditions and assurances contained in the various grant agreements under which the United States of America participated in the cost of land and/or improvements at the Kingman Airport, the City of Kingman shall agree to spend an amount equal to the net proceeds which will or can be derived from such sale for specified items of airport

improvement as set forth herein within a specific time; and

WHEREAS, the City Council of the City of Kingman has contemplated the sale of land subject to its release for that purpose by the Federal Aviation Administration, and recognizes the need for the continued provision of adequate public airport facilities to be provided the residents of the City of Kingman, County of Mohave, Arizona.

NOW, THEREFORE, BE IT RESOLVED by the City Council of the City of Kingman, that in consideration of the Federal Aviation Administration's approval and release for sale of land at the Kingman Airport, that the City Council of the City of Kingman does hereby promise, covenant and agree with the Federal Aviation Administration of the United States of America to expend, within Five (5) Years from the date on which the City of Kingman subsequently sells any portion of the released property, an amount equal to the net proceeds which do or would result from the sale of such land, for the improvement of the Kingman Airport within Five (5) Years of each such sale of each parcel of land sold hereunder, as follows:

      A.  Acquire land for approach protection;

      B.  Reconstruct existing airport apron;

      C.  Reconstruct existing airport taxiway;

-2-

D.   Improvements made pursuant to the
     Airport Improvement Program (AIP).


The City Council for the City of Kingman further hereby promises, covenants and agrees with the Federal Aviation Administration of the United States of America that in the event the cost of the above items of improvement is less than the net proceeds that is or could be realized from the sale of such land, the City of Kingman shall, with the Federal Aviation Administration's approval, expend within Five (5) Years of each sale of each parcel of land sold hereunder, any excess funds upon items of development within the following priority categories, and it is further provided that all currently needed development within the highest priority category must be accomplished before improvements in the next category are begun.


   A.   Approved items of airport develop-
        ment set forth in FAR Part 152 (and
        as appropriately, set forth in the
        NASP by priority of need) to be
        accomplished in accordance with
        currently applicable FAA design
        criteria.

   B.   Any aeronautical items of airport
        development ineligible for direct
        Federal aid under the Airport
        Development Aid Program.

   C.   Deposit to the airport fund for
        deferred use within a reasonable
        time for items A and B above.

-3-

D.  Retirement of airport bonds which are secured by pledges of airport revenue.   Includes repayment of loans from other Federal agencies for such development.

E.  Development of common use facilities and utilities of the dedicated revenue production property of the airport now owned or subsequently acquired.

F.  Current expenses for repair, maintenance and operation of airport use properties.

The City Council of the City of Kingman hereby empowers, authorizes, and directs the Mayor of the City of Kingman to enter into an Agreement with the United States of America, acting by and through the Federal Aviation Administration for the purposes of binding the City of Kingman to all its promises, covenants and agreements, as set out in this Resolution.

I HEREBY CERTIFY that the foregoing Resolution was introduced and read at a regular meeting of the City Council of the City of Kingman on the 5th day of December, 1988, and was duly adopted at said meeting.

City of Kingman

By_____
CAROL ANDERSON, Mayor

ATTEST:

_____
DOROTHY HELMER, Clerk

-4-

I hereby certify that the above Resolution is
a true and correct copy of Resolution # 1271
approved by the City Council of the City of
Kingman at their meeting held on Monday, the
5th day December, 1988.

_____
DOROTHY HELMER, Clerk

EXHIBIT *A-1*

KINGMAN AIRPORT REMNANT PARCEL:

That portion of Sections 14, 23, 26, 27, and 34 lying Southeasterly of the Southeasterly Right-of-way line for the A.T.& S.F. Railroad Company 200 foot wide Right-of-way.

That portion of Section 33 lying Southeasterly of the Southeasterly Right-of-way line for "BERRY STATION" of the A.T.& S.F. Railroad Company.

The S 1/2 of the SW 1/4 and the S 1/2 of the N 1/2 of the SW 1/4 and the S 1/2 of the N 1/2 of the N 1/2 of the SW 1/4 of Section 24; All of Sections 25, 35, and 36. All of the above Sections within T.22N., R.16W., G.& S.R.M., Mohave County, Arizona, and

EXCEPT the following described Parcel:

A portion of Sections 14, 23, 25, 26, and 27 of T.22N., R.16W., G.& S.R.M. situate in Mohave County, Arizona, and being more particularly described as follows:

BEGINNING at the SW Corner of Section 26, T.22N., R.16W., G.& S.R.M., a U.S.G.L.O. 2 1/2" ODIP W/Brass Cap, having Arizona West Zone Transverse Mercator State Plane Coordinates of X = 438005.02 and Y = 1547784.46; thence N.00°08'30"E. (Basis of Bearings: Grid North, said West Zone) and along the West line of Section 26, 500.00 feet to the True Point of Beginning; thence S.89°41'39"E. and parallel to the South line of said Section 26, 655.00 feet to a point in the Southwesterly line of the "Worm Farm Parcel"; thence S.44° 52'45"E., along the Southwesterly line of said "Worm Farm Parcel" 79.00 feet to a 5/8" rebar being the Southerly most corner of said "Worm Farm Parcel"; thence continuing S.44°52'45"E., 60.00 feet to a point; thence N.45°07'15"E. and parallel to the Southeasterly line of said "Worm Farm Parcel", 406.15 feet to the beginning of a Tangent Curve Concave to the South having a radius of 30.00 feet and thence continuing along said Circular Curve through a Central Angle of 88°09'35" to the right, an arc length of 46.16 feet to the point of reverse curve; thence Southeasterly along a Tangent Curve Concave to the NE having a radius of 274.81 feet through a Central Angle of 43°18'01" to the left, an arc length of 207.68 feet to the point of Tangency; thence N.89°58' 49"E., 1278.54 feet to the beginning of a Tangent Curve Concave to the NW having a radius of 250.00 feet; thence continuing along said Circular Curve through a Central Angle of 44°50'21" to the left, an arc length of 195.65 feet to the point of tangency; thence N.45°08'28"E., 1837.88 feet to a point; thence N.44°52'29"W., 113.99 feet to a cusp point; thence Easterly along a Tangent Curve concave to the North having a radius of 30.00 feet through a Central Angle of 89°59'03" to the left, an arc length of 47.12 feet to the point of tangency; thence N.45°08'28"E., 1760.02 feet to the beginning of a Tangent Curve Concave to the NW having a radius of 166.00 feet and thence continuing along said Circular Curve through a Central Angle of 44°59'31" to the left, an arc length of 130.35 feet to the Point of Tangency in the East line of the NE

EXHIBIT *A-1*

1/4 of Section 26; thence N.00°08'57"E., along said East line 1834.26 feet to the NE Corner of said Section 26 being a U.S.G.L.O. 2 1/2" ODIP W/Brass Cap; thence N.00°10'48"E., along the East line of the SW 1/4 of Section 23, 2644.44 feet to the E 1/4 Corner of said Section 23 being a U.S.G.L.O. 1" ODIP W/Brass Cap; thence N.00°10'31"E., along the East line of the NE 1/4 of said Section 23, 2643.87 feet to the NE Corner of said Section 23 being a U.S.G.L.O. 2 1/2" ODIP W/Brass Cap; thence N.00°02'54"E. along the East line of the SE 1/4 of Section 14, 1081.05 feet to a point being the intersection of the aforementioned East line and the Southeasterly Right-of-way line of the A.T.& S.F. Railroad; thence S.38°25'17"W. along the aforementioned Southeasterly Right-of-way line, 13233.00 feet to a point; thence S.33°16'48"E. 901.45 feet to a point; thence S.89°57'20"E. and parallel to the South line of Section 27, 2419.59 feet to the Point of Beginning.

Total Area of this Parcel = 2989.38 Acres, More or Less.



EXHIBIT _A-2_

KINGMAN AIRPORT INDUSTRIAL PARK REMNANT PARCEL:

A portion of Sections 14, 23, 25, 26, and 27 of T.22N., R.16W., G.& S.R.M situate in Mohave County, Arizona, and being more particularly described as follows:

BEGINNING at the SW corner of Section 26, T.22N., R.16W., G.& S.R.M., a U.S.G.L.O. 2 1/2" ODIP W/Brass Cap, having Arizona West Zone Transverse Mercator State Plane Coordinates of X = 438005.02 and Y = 1547784.46; thence N.00°08'30"E. (Basis of Bearing: Grid North, said West Zone) and along the West line of Section 26, 500.00 feet to the True Point of Beginning; thence S.89°41'39"E. and parallel to the South line of said Section 26, 655.08 feet to a point in the Southwesterly line of the "Worm Farm Parcel"; thence S.44° 52'45"E., along the Southwesterly line of said "Worm Farm Parcel" 79.00 feet to a 5/8" rebar being the Southerly most corner of said "Worm Farm Parcel"; thence continuing S.44°52'45"E., 60.00 feet to a point; thence N.45°07'15"E. and parallel to the Southeasterly line of said "Worm Farm Parcel", 406.15 feet to the Beginning of a Tangent Curve Concave to the South having a radius of 30.00 feet and thence continuing along said Circular Curve through a Central Angle of 88°09'35" to the right, an arc length of 46.16 feet to the point of reverse curve; thence Southeasterly along a Tangent Curve Concave to the NE having a radius of 274.81 feet through a Central Angle of 43°18'01" to the left, an arc length of 207.68 feet to the point of Tangency; thence N.89°  49 1278.54 feet to the beginning of a Tangent Curve Concave to the NW having a radius of 250.00 feet; thence continuing along said Circular Curve through a Central Angle of 44°50'21" to the left, an arc length of 195.65 feet to the point of tangency; thence N.45°08'28"E., 1837.88 feet to a point; thence N.44°52'29"W., 113.99 feet to a cusp point; thence Easterly along a Tangent Curve concave to the North having a radius of 30.00 feet through a Central Angle of 89°59'03" to the left, an arc length of 47.12 feet to the point of tangency; thence N.45°08'28"E., 1760.02 feet to the beginning of a Tangent Curve Concave to the NW having a radius of 166.00 feet and thence continuing along said Circular Curve through a Central Angle of 44°59'31" to the left, an arc length of 130.35 feet to the Point of Tangency in the East line of the NE 1/4 of Section 26; thence N.00°08'57"E., along said East line 1834.26 feet to the NE Corner of said Section 26 being a U.S.G.L.O. 2 1/2" ODIP W/Brass Cap; thence N.00°10'48"E., along the East line of the SW 1/4 of Section 23, 2644.44 feet to the E 1/4 Corner of said Section 23 being a U.S.G.L.O. 1" ODIP W/Brass Cap; thence N.00°10'31"E., along the East line of the NE 1/4 of said Section 2 2643.87 feet to the NE Corner of said Section 23 being a U.S.G.L.O. 2 1/2" ODI W/Brass Cap; thence N.00°02'54"E. along the East line of the SE 1/4 of Section 14, 1081.05 feet to a point being the intersection of the aforementioned East line and the Southeasterly Right-of-way line of the A.T.& S.F. Railroad; thence S.38°25'17".8W. along the aforementioned Southeasterly Right-of-way line, 13233.00 feet to a point; thence S.33°16'48"E., 901.45 feet to a point; thence S.89°57'20"E. and parallel to the South line of Section 27, 2419.59 feet    th Point of Beginning.

EXCEPT the following described Parcel:

EXHIBIT _A-2_

GENERAL CABLE PARCEL:

A Parcel containing 56.104 Acres, more or less, being a part of
Section 26 and a part of Section 27, Township 22 North, Range 16 West,
G.& S.R.M., Mohave County, Arizona, said Parcel being more particularly
described as follows:

Beginning at a point which lies S 73° 19' 19" W, a distance of
3753.47 feet from the Northeast Corner of said Section 26; Thence
N 45° 00' W, a distance of 930.00 feet; Thence Northwesterly along the
arc of a curve, concave to the Southwest and having a radius of 175.00
feet and a central angle of 90° 00', an arc distance of 274.89 feet;
Thence S 45° 00' W, a distance of 844.16 feet; Thence Southwesterly along
the arc of a curve, concave to the Southwest and having a radius of
849.95 feet and a central angle of 6° 44', an arc distance of 99.88
feet; Thence S 38° 16' W, a distance of 1060.84 feet; Thence Southwester-
ly along the arc of a curve, having a radius of 20.00 feet and a central
angle of 83° 16' an arc distance of 29.07 feet; Thence S 45° 00' E, a
distance of 397.82 feet; Thence N 45° 00' E, a distance of 41.00 feet;
Thence S 45° 00' E, a distance of 100.25 feet; Thence S 45° 00' W, a
distance of 41.00 feet; Thence S 45° 00' E, a distance of 486.82 feet;
Thence Southeasterly along the arc of a curve concave to the Northeast
and having a radius of 20.00 feet and a central angle of 90° 00' an arc
distance of 31.42 feet; Thence N 45°00' E, a distance of 2120 feet; Thence
Northeasterly along the arc of a curve concave to the Northwest and having
a radius of 50.00 feet and a central angle of 90° 00', an arc distance of
78.54 feet to the Point of Beginning.

PARCEL II-I as delineated on Record of Survey:  Book 4, Page 39 recorded
September 11, 1986 at fee number 86-37849 records of Mohave County,
Arizona situate in the NE 1/4 of Section 26, T.22N., R.16W., G.& S.R.M.,
Mohave County, Arizona.  Area = 2.50 Acres, More or Less.

PARCEL IX-C as delineated on Record of Survey:  Book 4, Page 40 recorded
September 11, 1986 at fee number 86-37850 records of Mohave County,
Arizona situate in the N 1/2 of Section 26, T.22N., R.16W., G.& S.R.M.,
Mohave County, Arizona.  Area = 6.92 Acres, More or Less.

PARCEL VI-A as delineated on Record of Survey:  Book 4, Page 37 recorded
July 24, 1986 at fee number 86-30962 records of Mohave County, Arizona
situate in the SW 1/4 of Section 23 and the NW 1/4 of Section 26, T.22N.,
R.16W., G.& S.R.M., Mohave County, Arizona.  Area = 5.00 Acres, More or Less.

PARCEL IX-B as delineated on Record of Survey:  Book 4, Page 15 recorded
February 25, 1986 at fee number 86-6518 records of Mohave County, Arizona
situate in the N 1/2 of Section 26, T.22N., R.16W., G.& S.R.M., Mohave
County, Arizona.  Area = 15.71 Acres, More or Less.

PARCEL IV-I, J, K, L as delineated on Record of Survey:  Book 3, Page 14
recorded July 18, 1983 at fee number 83-26900 records of Mohave County,
Arizona situate  in the SW 1/4 of Section 26, T.22N., R.16W., G.& S.R.M.,
Mohave County, Arizona.  Area  = 5.02 Acres, More or Less.

EXHIBIT A-2
PAGE 2

PARCELS IV-G, H as delineated on Record of Survey: Book 3, Page 12 recorded July 18, 1983 at fee number 83-26898 records of Mohave County, Arizona situate in Section 26, T.22N., R.16W., G.& S.R.M., Mohave County, Arizona. Area = 10.70 Acres, More or Less.

PARCEL IV-F as delineated on Record of Survey: Book 3, Page 11 recorded July 18, 1983 at fee number 83-26898 records of Mohave County, Arizona situate in Section 26, T.22N., R.16W., G.& S.R.M., Mohave County, Arizona. Area = 12.84 Acres, More or Less.

PARCELS IV-R, S as delineated on Record of Survey: Book 3, Page 96 recorded August 8, 1985 at fee number 85-28343 records of Mohave County, Arizona situate in the NW 1/4 of Section 26, T.22N., R.16W., G.& S.R.M., Mohave County, Arizona. Area = 4.63 Acres, More or Less.

PARCEL II-K as delineated on Record of Survey: Book 5, Page 10 recorded March 2, 1988 at fee number 88-8134 records of Mohave County, Arizona situate in the NE 1/4 of Section 26, T.22N., R.16W., G.& S.R.M., Mohave County, Arizona. Area = 2.15 Acres, More or Less.

PARCEL IV-E as delineated on Record of Survey: Book 5, Page 13 recorded March 2, 1988 at fee number 88-8137 records of Mohave County, Arizona situate in Section 27, T.22N., R.16W., G.& S.R.M., Mohave County, Arizona. Area = 4.61 Acres, More or Less.

PARCEL IX-F as delineated on Record of Survey: Book 5, Page 28 recorded May 31, 1988 at fee number 88-22059 records of Mohave County, Arizona situate in the NE 1/4 of Section 26, T.22N., R.16W., G.& S.R.M., Mohave County, Arizona. Area = 10.00 Acres, More or Less.

PARCEL II-L as delineated on Record of Survey: Book 5, Page 30 recorded May 31, 1988 at fee number 88-22061 records of Mohave County, Arizona situate in the SE 1/4 of Section 26, T.22N., R.16W., G.& S.R.M., Mohave County, Arizona. Area = 1.50 Acres, More or Less.

PARCEL IV-O-A-A as delineated on Record of Survey Book 4, Page 77 recorded July 7, 1987 at fee number 87-27966 records of Mohave County, Arizona situate in Section 26, T.22N., R.16W., G.& S.R.M., Mohave County, Arizona. Area = 2.00 Acres, More or Less.

PARCEL IV-A, B, C as delineated on Parcel Plat: Book 1, Page 59 recorded April 23, 1979 at fee number 79-12670 and Parcel Plat: Book 1, Page 72 recorded April 9, 1980 at fee number 80-12574 records of Mohave County, Arizona situate in Sections 26, 27, T.22N., R.16W., G.& S.R.M., Mohave County, Arizona. Area = 60.52 Acres, More or Less.

PARCEL V-J as delineated on Record of Survey: Book 4, Page 6 recorded December 5, 1985 at fee number 85-42277 records of Mohave County, Arizona situate in Section 27, T.22N., R.16W., G.& S.R.M., Mohave County, Arizona. Area = 0.86 Acres, More or Less.

PARCEL IX-A as delineated on Record of Survey: Book 4, Page 4 recorded September 24, 1985 at fee number 85-33700 records of Mohave County, Arizona situate in the NE 1/4 of Section 26, T.22N., R.16W., G.& S.R.M., Mohave County, Arizona. Area = 7.00 Acres, More or Less.

EXHIBIT A-2

PARCEL V-I as delineated on Record of Survey:  Book 3, Page 99 recorded August 8, 1985 at fee number 85-28346 records of Mohave County, Arizona situate in Section 27, T.22N., R.16W., G.& S.R.M., Mohave County, Arizona.  Area = 0.38 Acres, More or Less.

PARCEL IV-Q as delineated on Record of Survey:  Book 3, Page 86 recorded May 23, 1985 at fee number 85-18341 records of Mohave County, Arizona situate in Section 26, T.22N., R.16W., G.& S.R.M., Mohave County, Arizona.  Area = 2.00 Acres, More or Less.

PARCEL V-A as delineated on Record of Survey:  Book 3, Page 62 recorded January 16, 1985 at fee number 85-1817 records of Mohave County, Arizona situate in the SW 1/4 of Section 26, T.22N., R.16W., G.& S.R.M., Mohave County, Arizona.  Area = 0.44 Acres, More or Less.

PARCEL V-C as delineated on Record of Survey:  Book 3, Page 63 recorded January 16, 1985 at fee number 85-1818 records of Mohave County, Arizona situate in the SW 1/4 of Section 26, T.22N., R.16W., G.& S.R.M., Mohave County, Arizona.  Area = 0.47 Acres, more or Less.

PARCEL IV-N as delineated on Record of Survey:  Book 3, Page 49 recorded July 27, 1984 at fee number 84-28073 records of Mohave County, Arizona situate in Sections 26, 27, T.22N., R.16W., G.& S.R.M., Mohave County, Arizona.  Area = 9.43 Acres, More or Less.

PARCEL II-F as delineated on Record of Survey:  Book 3, Page 17 recorded July 18, 1983 at fee number 83-26903 records of Mohave County, Arizona situate in the NE 1/4 of Section 26, T.22N., R.16W., G.& S.R.M., Mohave County, Arizona.  Area = 3.50 Acres, More or Less.

PARCEL IV-M as delineated on Record of Survey:  Book 3, Page 16 recorded July 18, 1983 at fee number 82-26902 records of Mohave County, Arizona situate in Section 26, T.22N., R.16W., G.& S.R.M., Mohave County, Arizona. Area = 4.00 Acres, More or Less.

PARCELS II-A, C, D as delineated on Record of Survey:  Book 3, Page 15 recorded July 18, 1983 at fee number 83-26901 records of Mohave County, Arizona situate in the NE 1/4 of Section 26, T.22N., R.16W., G.& S.R.M., Mohave County, Arizona.  Area = 4.48 Acres, More or Less.

PARCEL IX-D-C as delineated on Record of Survey:  Book 5, Page 38 recorded August 23, 1988 at fee number 88-35231 records of Mohave County, Arizona situate in the N 1/2 of Section 26, T.22N., R.16W., G.& S.R.M., Mohave County, Arizona.  Area = 2.00 Acres, More or Less.

PARCEL IX-H as delineated on Plat recorded August 23, 1988 at fee number 88-35230 records of Mohave County, Arizona situate in the SE 1/4 of Section 23 and the NE 1/4 of Section 26, T.22N., R.16W., G.& S.R.M., Mohave County, Arizona.  Area = 36.14 Acres, More or Less.

Total Area this Parcel = 748.65 Acres, More or Less.



## "EXHIBIT M"
## GRANTS

**Federal Aviation Administration Grants In Progress:**

| | | |
|---|---|---:|
| 1. | A.I.P. 3-04-0021-04 | $138,411.00 |
| 2. | A.I.P. 3-04-0021-05 | 72,848.00 |
| 3. | A.I.P. 3-04-0021-06 | 500,000.00 |
| 4. | A.I.P. 3-04-0021-07 | 500,000.00 |

**Federal Aviation Administration Grants Previously Administered:**

| | | |
|---|---|---:|
| 1. | A.I.P. 3-04-0021-01 | 162,046.12 |
| 2. | A.I.P. 3-04-0021-02 | 451,921.55 |
| 3. | A.I.P. 3-04-0021-03 | 610,488.18 |
| 4. | ADAP 01 | 866,416.00 |
| 5. | ADAP 02 | 126,739.18 |
| 6. | ADAP 03 | 101,987.20 |

**ADOT Aeronautics Division Grants In Progress:**

| | | |
|---|---|---:|
| 1. | Fund Code N856 | $6,794.00 |
| 2. | Fund Code N006 | 289,894.00 |
| 3. | Fund Code N006 | 3,576.00 |
| 4. | Fund Code N106 | 299,700.00 |
| 5. | Fund Code N206 | 475,000.00 |
| 6. | Fund Code N155 | 100,000.00 |

**ADOT Aeronautics Division Grants Previously Administered:**

| | | |
|---|---|---:|
| 1. | Fund Code 90825 | $55,950.00 |
| 2. | Fund Code 90777 | 21,957.05 |
| 3. | Fund Code 90847 | 29,654.33 |

**Economic Development Administration Grants Previously Administered:**

| | | |
|---|---|---:|
| 1. | Grant No. 07-01-02352 | |
| 2. | Grant No. 07-06-03136 | 10,000.00 |
| 3. | Grant No. 07-01-02816 | 218,000.00 |

"EXHIBIT N"
## CLAIMS


As of the date of the execution of the Assignment Agreement, there are no claims known or unknown  by any director, member or staff person against the Kingman Airport and Industrial Park.

"EXHIBIT A"
# CAPITAL IMPROVEMENT ASSETS

KINGMAN AIRPORT AUTHORITY, INC
FIXED ASSETS

|  | COST | ACCUMULATED DEPRECIATION 6/30/92 | NET BOOK VALUE 6/30/92 |
|---|---|---|---|
| LAND IMPROVEMENTS AIRPORT | 2,554,292 | 420,753 | 2,133,539 |
| LAND IMPROVEMENTS INDUTRIAL PARK | 1,376,896 | 279,479 | 1,097,417 |
| BUILDINGS & IMPROVEMENTS AIRPORT | 229,304 | 80,954 | 148,350 |
| BUILDINGS & IMPROVEMENTS INDUST PK | 106,197 | 40,912 | 65,285 |
| OFFICE FURNITURE & EQUIPMENT | 46,179 | 35,094 | 11,085 |
| TRANSPORTATION EQUIPMENT | 29,615 | 22,939 | 6,676 |
| INTANGIBLE ASSETS | 15,000 | 9,612 | 5,388 |
|  | 4,357,483 | 889,743 | 3,467,740 |

*Charlene -*
*Please file w/*
*Airport Authority*
*documents.*
*TKS*
*Lou*
*6-11-92*

*Lou —*
*These bel*
*c the Assig*
*Agreement.*

RECEIVED
JUN - 8 1992
CITY OF KINGMAN

ASSETS AQUIRED THRU 6/91

KINGMAN AIRPORT AUTHORITY, INC
FIXED ASSETS

| DATE AQUIRED | DESCRIPTION | COST | ACCUMULATED DEPRECIATION 6/30/92 | NET BOOK VALUE 6/30/92 |
|---|---|---|---|---|
| LAND IMPROVEMENTS AIRPORT | | | | |
| 10/83 | APRON OVERLAY | 317,024 | 179,647 | 137,377 |
| 9/85 | PARKING LOT | 8,234 | 5,764 | 2,470 |
| 1988 | KINGMAN RUNWAY 17/35 | 1,186,356 | 177,953 | 1,008,403 |
| 9/88 | CLOSURE MARKINGS 7/25 | 900 | 345 | 555 |
| 10/88 | CAPACITY STUDY 3/21 | 4,850 | 1,778 | 3,072 |
| 6/89 | RAMP REPAVING | 7,491 | 2,310 | 5,181 |
| 6/90 | OVERLAY-RUNWAY ACCESS RD | 3,965 | 826 | 3,139 |
| 1/91 | RUNWAY 17/35 LIGHTING/PAV | 989,200 | 46,676 | 942,524 |
| 1/91 | RUNWAY 3/21 PAVEMENT | 36,272 | 5,454 | 30,818 |
| TOTAL LAND IMPROVEMENTS AIRPORT | | 2,554,292 | 420,753 | 2,133,539 |

KINGMAN AIRPORT AUTHORITY, INC
FIXED ASSETS

| DATE<br>AQUIRED | DESCRIPTION | COST | ACCUMULATED<br>DEPRECIATION<br>6/30/92 | NET BOOK<br>VALUE<br>6/30/92 |
|---|---|---|---|---|
| LAND IMPROVEMENTS INDUSTRIAL PARK | | | | |
| 2/80 | RAILROAD SPUR | 81,477 | 33,723 | 47,754 |
| 4/80 | WATER LINE | 69,287 | 27,907 | 41,380 |
| 4/80 | SEWER LINE | 1,123 | 456 | 667 |
| 4/81 | WATER LINE | 23,149 | 8,681 | 14,468 |
| 2/82 | WATER LINE | 6,380 | 2,215 | 4,165 |
| 4/84 | WATER LINE | 358,720 | 101,637 | 257,083 |
| 3/85 | TRUCK TERMINAL ASPHALT | 14,538 | 10,540 | 3,998 |
| 11/85 | GAS LINE | 2,912 | 639 | 2,273 |
| 2/86 | SEWER LINE | 54,613 | 11,529 | 43,084 |
| 6/87 | RAILROAD DRILL TRACK | 78,317 | 13,271 | 65,046 |
| 6/87 | LANDSCAPING – TREES | 4,815 | 816 | 3,999 |
| 1988 | ACCESS ROAD | 322,912 | 48,437 | 274,475 |
| 11/88 | RAILROAD SPUR REPAIRS | 4,981 | 830 | 4,151 |
| 2/88 | LANDSCAPING~IRRIGATION | 1,153 | 404 | 749 |
| 12/88 | SIGNS | 322 | 113 | 209 |
| 2/89 | SECURITY FENCE | 1,074 | 358 | 716 |
| 11/90 | SIGN | 674 | 101 | 573 |
| 1/91 | OLYMPIC DRIVE | 123,700 | 6,485 | 117,215 |
| 1/91 | DRILL TRACK | 188,167 | 9,408 | 178,759 |
| 1/91 | DRILL TRACK REPAIRS | 38,582 | 1,929 | 36,653 |
| TOTAL LAND IMPROVEMENTS INDUST PK | | 1,376,896 | 279,479 | 1,097,417 |



KINGMAN AIRPORT AUTHORITY, INC
FIXED ASSETS

| DATE AQUIRED | DESCRIPTION | COST | ACCUMULATED DEPRECIATION 6/30/92 | NET BOOK VALUE 6/30/92 |
|---|---|---|---|---|
| BUILDING & IMPROVEMENTS AIRPORT | | | | |
| 5/84 | CRASH FIRE RESCUE EXPANSION | 38,113 | 11,797 | 24,316 |
| 9/81 | OFFICE REMODEL | 3,518 | 2,541 | 977 |
| 1984 | OFFICE REMODEL | 1,411 | 705 | 706 |
| 1985 | TERMINAL REMODEL | 7,562 | 3,781 | 3,781 |
| 9/85 | BUILDING REHAB - PAINTING | 7,500 | 5,125 | 2,375 |
| 9/85 | BUILDING REHAB-ROOF | 45,000 | 30,750 | 14,250 |
| 5/87 | SHADE HANGER | 31,442 | 16,245 | 15,197 |
| 1/89 | TERMINAL REMODELING | 3,025 | 690 | 2,335 |
| 2/90 | REFRIGERATOR-TERM REST | 1,049 | 362 | 687 |
| 6/90 | AIR CONDITIONER-TERM BLDG | 8,376 | 2,493 | 5,883 |
| 1/91 | WIND SENSOR | 1,009 | 216 | 793 |
| 2/91 | CARPET (MCAA OFFICE) | 1,789 | 362 | 1,427 |
| 6/9 | HANGAR B RENOVATIONS | 81,510 | 5,887 | 75,623 |
| TOTAL BUILDING & IMPROVEMENTS AIRPORT | | 229,304 | 80,954 | 148,350 |



KINGMAN AIRPORT AUTHORITY, INC
FIXED ASSETS

| DATE AQUIRED | DESCRIPTION | COST | ACCUMULATED DEPRECIATION 6/30/92 | NET BOOK VALUE 6/30/92 |
|---|---|---|---|---|
| BUILDING & IMPROVEMENTS–INDUSTRIAL PARK | | | | |
| 7/81 | SIGN | 4,806 | 4,806 | 0 |
| 1/84 | SIGN | 5,606 | 4,765 | 841 |
| 3/85 | SIGN | 1,970 | 1,478 | 492 |
| 9/84 | TRUCK TERMINAL BLDG | 86,724 | 26,885 | 59,839 |
| 10/84 | TRUCK TERMINAL CARPET | 1,618 | 1,254 | 364 |
| 6/87 | SIGN | 2,713 | 1,379 | 1,334 |
| 3/91 | ROOFING–WOOD FAB BLDG | 2,760 | 345 | 2,415 |
| TOTAL BLDG & IMPR–INDUSTRIAL PARK | | 106,197 | 40,912 | 65,285 |