**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| City of Kingman,<br><br>Plaintiff,<br><br>v.<br><br>Kingman Airport Authority Incorporated,<br><br>Defendant. | No. CV-17-08272-PCT-JJT<br><br>**ORDER** |

At issue is the Plaintiff City of Kingman's ("Kingman") Motion to Remand (Doc. 6, Mot.), to which Defendant Kingman Airport Authority ("KAA") filed a Response (Doc. 13, Resp.), and Kingman filed a Reply (Doc. 17, Reply). In this Order, the Court will also address Kingman's "Notice of Application Requiring Immediate Attention by the Court." (Doc. 20.) The Court finds these matters suitable for resolution without oral argument. *See* LRCiv 7.2(f).

**I.    BACKGROUND**

In the Complaint (Doc. 1-6 at 2-4, Compl.) and its attachments, Kingman alleges that it has leased the Kingman Airport to KAA since 1992, and the 1992 Lease Agreement together with Amendments made in 2003 and 2007 (collectively, "Lease") have a term that expires in 2028. The Lease sets forth the conditions under which Kingman can terminate it, including a failure by KAA "to perform, keep and observe any and all" of the Lease terms, providing Kingman gives notice of any default or breach and a 90-day opportunity to cure to KAA. (Doc. 1-1, Lease ¶ 20.) The Lease also provides for

the compensation to be paid in the event the Airport is "condemned, taken or acquired by a body having superior power of eminent domain." (Lease ¶ 17.)

Kingman became dissatisfied with KAA's operation of the Airport and, on November 7, 2017, the City Council passed Resolution 5113, declaring that KAA was failing to perform under the Lease, mismanaging the Airport, "committing waste," and devaluing the City's assets. (Doc. 1-8 at 169, Resolution 5113.) Resolution 5113 thus authorized Kingman to acquire the Airport pursuant to the provisions of A.R.S. § 12-1111, *et seq.*—Arizona's condemnation statutes. On November 14, 2017, the City sent a letter to KAA offering to acquire the Lease and KAA's assets for zero dollars plus assumption of KAA's obligations and giving KAA 20 days in which to respond, under threat of a condemnation action. (Doc. 1-2.)

On December 1, 2017, KAA filed a Complaint in this Court—designated Case No. CV-17-08260-PCT-JJT—alleging that, as a result of Resolution 5113 authorizing Kingman's condemnation of KAA's leasehold, KAA may not seek damages for what otherwise would be Kingman's breach of the Lease through its failure to give KAA notice of any default or breach and a 90-day opportunity to cure, and through its termination of the Lease in the absence of any other required conditions. KAA also contended that Arizona law does not support Kingman's position that it is "a body having superior power of eminent domain" allowing it to condemn the leasehold and triggering the compensation terms of paragraph 17 of the Lease. Furthermore, KAA alleged that Kingman violated Arizona's condemnation statute, A.R.S. § 12-1112, because the land was already appropriated to some public use and the public use to which it is to be applied is not a more necessary public use. Based on these allegations, KAA raised two claims against Kingman: (1) a claim under 42 U.S.C. § 1983 for violation of Article 1, Section 10, Clause 1 of the United States Constitution (the "Contracts Clause"); and (2) a claim under Article II, Section 25 of the Arizona Constitution (the "State Contracts Clause"). KAA sought preliminary and permanent injunctive relief precluding Kingman

from enforcing Resolution 5113 or otherwise condemning KAA's leasehold interest in the Kingman Airport and an award of attorney's fees.

On December 5, 2017, Kingman filed the present case: a Complaint in Eminent Domain in Mohave County Superior Court seeking to condemn KAA's leasehold interest under Arizona's eminent domain laws. (Compl. at 1-2.) KAA removed the case to this Court, contending that its Contracts Clause claim against Kingman's condemnation action gives the Court federal question jurisdiction. (Doc. 1, Notice of Removal at 1-2.) Kingman has moved to remand this case to state court. (Doc. 6.) Kingman has also filed a "Notice of Application Requiring Immediate Attention by the Court," requesting that this Court immediately address Kingman's underlying application for immediate possession of the KAA leasehold. (Doc. 20.)

The Court has now dismissed KAA's earlier-filed action against Kingman for lack of subject matter jurisdiction (Case No. CV-17-08260-PCT-JJT) and will now resolve Kingman's Motion to Remand (Doc. 6) and "Notice of Application Requiring Immediate Attention by the Court" (Doc. 20) filed in this action.

## II. LEGAL STANDARD

Federal courts may exercise removal jurisdiction over a case only if subject matter jurisdiction exists. 28 U.S.C. § 1441(a); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004). The removing party is required to provide a signed notice of removal that contains a short and plain statement of the grounds for removal. 28 U.S.C. § 1446(a). The removing party carries the burden of establishing subject matter jurisdiction, and "[a]ll doubts about federal jurisdiction should be resolved in favor of remand to state court." *In re Prempro Prod. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010); *see* 28 U.S.C. § 1447(c). A plaintiff may seek to have a case remanded to the state court from which it was removed if the district court lacks jurisdiction or if there is a defect in the removal procedure. 28 U.S.C. § 1447(c). The district court must remand the case if it appears before final judgment that the court lacks subject matter jurisdiction. *Id.*

## III. ANALYSIS

### A. Motion to Remand

KAA contends that this Court has subject matter jurisdiction over Kingman's state court condemnation action because that action necessarily includes a determination whether Resolution 5113 and Kingman's associated actions to condemn KAA's leasehold interest contravene the Contracts Clause of the United States Constitution, a federal question providing the Court with jurisdiction.[1][2] (Notice of Removal at 1-2; Resp. at 4.) Presuming that, under *Gunn v. Minton*, 568 U.S. 251, 258 (2013), KAA's Contracts Clause claim is necessarily implicated in Kingman's state court condemnation action, the Court must conclude that KAA cannot state a Contracts Clause claim in this circumstance under the operative case law.

The Contracts Clause provides, "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. On a number of occasions, the Supreme Court has taken to laying out the scope of protection the Contracts Clause provides. In *West River Bridge Co. v. Dix*, 47 U.S. 507 (1848), on which Kingman relies in opposing KAA's assertion of federal question jurisdiction (Reply at 2-3), the State of Vermont granted a charter to a private corporation to operate a toll bridge across a river. 47 U.S. at 530. Some years later, Vermont exercised its eminent domain authority to extinguish the corporation's franchise, assess just compensation, and convert the bridge to a free public highway. *Id.* at 531. In evaluating the corporation's Contracts Clause claim against Vermont, the Supreme Court concluded that the Constitution did not prevent Vermont from exercising its power of eminent domain, even if the property taken from the corporation was previously conveyed by Vermont to the corporation. *Id.* at

---

[1] The Court addressed the same question in KAA's earlier-filed lawsuit, Case No. CV-17-08260-PCT-JJT, but, in the interest of completeness, the Court will repeat its analysis in large part here.

[2] In its Response, KAA also argues that only the Federal Aviation Administration determines who may operate an airport, which also gives this Court federal question jurisdiction. However, KAA did not allege this as a jurisdictional basis in its Notice of Removal.

- 4 -

532-33. The resulting doctrine, labelled the reserved powers doctrine, describes the proposition that a state "may not enter a contract that 'surrenders an essential attribute of its sovereignty,'" including its power of eminent domain. *Matsuda v. City & Cty. of Honolulu*, 512 F.3d 1148, 1153 (9th Cir. 2008) (quoting *U.S. Trust Co. v. New Jersey*, 431 U.S. 1, 23 (1977)). Such a contract is void *ab initio* and, as a consequence, "the Contracts Clause may not be used to compel a state to adhere" to the contract. *Id.* at 1152-53. "As the Court explained, all contracts, whether they are between a state and a private actor or [between] private actors alone, are made subject to the understanding that the state may one day take the subject property for public use, provided that just compensation is paid." *Id.* at 1153. Kingman argues that this holding is dispositive of KAA's Contracts Clause claim.

KAA argues that an important distinction exists between *West River Bridge* and this case: here, the contract is between two state actors whose eminent domain powers are set forth in Arizona statutes. (*See* Resp. at 4.) As a result, the Lease was not a surrender of eminent domain power and the reserved powers doctrine does not apply. KAA thus contends that the heightened scrutiny test announced by the Supreme Court in *U.S. Trust*, 431 U.S. at 20-21, applies to determine whether a state (or local) law violates the Contracts Clause, namely, "(1) whether the state [or local] law has, in fact, operated as a substantial impairment of the contractual relationship; (2) whether the state [or local] law is justified by a significant and legitimate public purpose; and (3) whether the impairment resulting from the law was both reasonable and necessary to fulfill such public purpose." *Matsuda*, 512 F.3d at 1152 (internal quotations and citations omitted).

Essential to the application of the reserved powers doctrine is a showing that the contract in question—the Lease—prevents the state actor's exercise of the power of eminent domain, such that the state actor did not have the capacity to enter into the contract to begin with. *Matsuda*, 512 F.3d at 1154. The question before the Court is whether one state actor surrenders its eminent domain power by entering into a Lease with another state actor, where the state's statutes define the actors' eminent domain

powers and the Lease itself provides the terms of compensation when a state actor "having superior power of eminent domain" condemns the leasehold interest (Lease ¶ 17). Each party to the Lease, as a state actor, has the sovereign power the *West River Bridge* Court was concerned about, that is, the "right and the duty of guarding its own existence, and of protecting and promoting the interests and welfare of the community at large." 47 U.S. at 531. The Supreme Court's conclusion that "all *private* rights . . . are . . . held in subordination to . . . and must yield in every instance" to a state's eminent domain power, *id.* at 532 (emphasis added), is not implicated in this case where private rights are not at issue. Put another way, the question is this: Does a state relinquish its "power of self-government and self-preservation," *id.*, when one of its subdivisions leases property to another?

The parties do not cite a case resolved by the reserved powers doctrine in which the underlying contract was entered into between two state actors, nor has the Court uncovered one. *But see Municipality of Anchorage v. Alaska*, 393 F. Supp. 2d 958 (D. Alaska 2005) (recognizing the application of the Contracts Clause to contracts entered into between two state actors but analyzing the state's actions not under the reserved powers doctrine but instead under the three-part heightened scrutiny test of *U.S. Trust*). In the more straightforward circumstance presented in *West River Bridge*, the state entered into a contract to give a private corporation the exclusive right to erect a bridge and take tolls, and the Supreme Court found the contract to be void as a surrender of the state's eminent domain power. The Ninth Circuit has subsequently applied the reserved powers doctrine in its review of the constitutionality of a state subdivision's contract with a private party and subsequent act to modify the contract. *E.g.*, *Matsuda*, 512 F.3d at 1152-54.

Here, the Lease is a contract between two state actors that contemplates condemnation by referring the parties to state law for a determination of which party has the superior power of eminent domain and what compensation should be paid in the event of condemnation. It is possible to interpret the Lease as a bargained-for procedure by

which condemnation is to take place, more than a surrender of state eminent domain power. But KAA seeks to invoke the Contracts Clause to stop Kingman from condemning KAA's leasehold interest *in any manner*, whether through Resolution 5113 or otherwise. Thus, regardless of the fact that both parties to the Lease are state actors here, *West River Bridge* and its progeny operate to provide that the Contracts Clause cannot be used to enforce a contract that prevents a state actor from exercising its eminent domain power. While the Court understands KAA's concerns, in the absence of further or contrary authority, the Court will apply the reserved powers doctrine and find that Kingman's condemnation of KAA's leasehold does not contravene the Contracts Clause.

Because KAA cannot state a claim against Kingman under the Contracts Clause or another provision of the United States Constitution, and that federal question was the basis for the Court's subject matter jurisdiction asserted by KAA in its Notice of Removal, the Court must remand this action. *See Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001) (concluding that, "[w]ithout the hook of [federal question] jurisdiction—the basis for original jurisdiction—the district court has no power under either 28 U.S.C. § 1367 or Article III of the Constitution to adjudicate *any* claims in the lawsuit" and should remand the case to state court). KAA may still raise its defenses to condemnation under Arizona law in state court, including that Kingman does not have superior eminent domain power over KAA and that the public use associated with Kingman's operation of the airport is not more necessary than the public use associated with KAA's operation of the airport. *See* A.R.S. § 12-1112.

Kingman requests that the Court "enter a show-cause order re Rule 11 sanctions in this case *sua sponte*" for sanctions against counsel for KAA. (Mot. at 5.) Federal Rule of Civil Procedure 11 provides that a person who signs a pleading "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or

reversing existing law or for establishing new law." Rule 11 also provides that a court may impose an appropriate sanction against an attorney who violates the Rule. In examining a pleading under Rule 11, the court must determine "(1) whether the [pleading] is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (internal quotation omitted). "As a shorthand for this test, [courts] use the word 'frivolous' to denote a filing that is *both* baseless *and* made without a reasonable and competent inquiry." *Id.* (internal quotation omitted).

Kingman implies that KAA's Notice of Removal is frivolous for the same reasons it sought remand of this action. The Court does not find that KAA's removal of this lawsuit even begins to rise to the level of frivolousness warranting the entry of Rule 11 sanctions—nor did Kingman cite a single case to try to convince the Court otherwise. Indeed, KAA's positions in asserting federal jurisdiction, while they did not prevail here, were at least colorable, and its counsel's briefing was candid, credible and considerably more helpful to this Court in resolving the issues before it than those of Kingman's counsel. If the Court had concern about any party's briefing to the Court, it was that of Kingman, which the Court found to have overlooked or avoided germane issues in several instances.

**B.      "Notice of Application Requiring Immediate Attention by the Court"**

Although Kingman's Motion to Remand required the Court to determine if it has subject matter jurisdiction over this matter, days after it was fully briefed and while it was still pending, Kingman filed a "Notice of Application Requiring Immediate Attention by the Court," requesting that the Court immediately address Kingman's underlying application for immediate possession of the KAA leasehold. (Doc. 20.) It might usually go without saying, but the Court would not proceed with a substantive hearing in an action if it has not yet determined its subject matter jurisdiction over the action—a subject Kingman itself put before the Court.

Moreover, in the Notice, not only does Kingman's counsel take a tone of aggressiveness bordering on arrogance in trying to tell the Court how to do its job; he does so by ignoring and distorting the controlling law. Counsel states that "an application for immediate possession must be given precedence over other civil cases under Arizona's condemnation statute [and] the law governing this case." (Doc. 20 at 1.) In support of this proposition, counsel cites A.R.S. § 12-1121(B), which provides that a court hearing a condemnation action "shall, at the request of any party, give the action precedence over other civil actions." But the prioritization of condemnation cases over all others that Arizona state law provides for in § 12-1121(B) is undeniably a procedural law, not a substantive law, and counsel states no authority to rebut the general proposition that federal courts entertaining federal Constitutional questions will apply federal procedural law. *See*, *e.g.*, Fed R. Civ. P. 81(c)(1). There is no federal procedural law giving priority of any sort to a state condemnation case.

Moreover, in support of his statement that "the law governing this case" requires immediate hearing of the instant action, counsel also cites Rule 71.1(k) of the Federal Rules of Civil Procedure, which provides that where a federal court hears a condemnation matter under state law, "if state law provides for trying an issue by jury—or for trying the issue of compensation by jury or commission or both—that law governs." The provision counsel cites has nothing to do with prioritization or precedence of the action. It is expressly limited to whether a jury will hear the matter. The entire Notice and all of the legal citation upon which counsel rests his argument is most charitably characterized as sloppy at best, and potentially something much worse. The Court is entitled to rely on accurate and candid citations of law and rules by all counsel; it expects the same now and in the future, as should any court.

IT IS THEREFORE ORDERED granting in part Plaintiff City of Kingman's Motion to Remand (Doc. 6). This case is to be remanded to state court, but Plaintiff's request for a show cause hearing related to Rule 11 sanctions is denied.

1    IT IS FURTHER ORDERED denying all other pending motions in this action as moot.

IT IS FURTHER ORDERED vacating the Rule 16 Scheduling Conference scheduling before District Judge Rayes at 4:30 p.m. on March 7, 2018.

IT IS FURTHER ORDERED directing the Clerk of Court to remand this action to Mohave County Superior Court as soon as is practicable.

Dated this 16th day of January, 2018.

*[signature]*

Honorable John J. Tuchi
United States District Judge